PER CURIAM.
Delilia Edwards (“the wife”) and George Edwards (“the husband”) were married in March 1967, when the wife was 14 years old and the husband was 19 years old. The parties have two adult children. After 39 years of marriage, the parties separated in November 2006. The wife sued the husband for a divorce, and, after a trial in March 2008, the trial court divorced the parties and divided their property. The wife appeals, arguing that the division of property is inequitable, that the trial court arbitrarily assigned values to the parties’ real property, and that the trial court’s award of short-term rehabilitative alimony without reserving the right to award permanent periodic alimony is error.
The judgment specifically sets out the property and alimony awards as follows:
“4. The parties jointly own five (5) real estate tracts and/or parcels which are comprised of as follows:
“A. The ‘motel property’;
“B. The mobile home and approximately 169 acre tract;
“C. The ‘trailer park property’;
“D. 1/2 acre tract on 280;
“E. The ‘Vincent property’.
“5. Each property and/or tract shall be immediately placed on the open market for sale. The parties shall cooperate in the listing of the properties with a realtor and agreeing upon a sales price for each property. Upon the sale of each tract or parcel, the net proceeds after paying all encumbrances, realty commissions, closing costs, etc., shall be divided as follows: the [wife] shall receive 33½% of the net sales proceeds; and the [husband] shall receive 66%% of the net sales proceeds. Pending the sale, the [husband] shall be responsible for paying all taxes, assessments and insurances on the properties.
“6. The [husband] shall be allowed the exclusive right to use and possess the mobile home for his use and benefit pending the sale of said property; and the right to exclusively operate and lease restaurant/motel property.
“7. In the event that the parties cannot agree on a sales price or any other issue regarding the sale of the property, either party may petition the court to sell same at public auction.
“8. Should the [husband] wish to purchase any of the [wife’s) interest in any of the properties, he shall be allowed to pay to the [wife] the following:
“A. $232,305.00 on the ‘motel property’;
“B. $55,425.00 on the ‘169 acre tract’;
“C. $54,660.00 on the ‘trailer park property’;
“D. $27,330.00 on the ‘1 ½ acre tract on 280’;
“E. $2,733.00 on the “Vincent property’-
“Should the [husband] remit to the [wife] said amount on any of the respective properties, the [husband] shall be the sole and separate owner of said property. At that time the [wife] shall *1257 execute any documents necessary to transfer to title in and to said property to the [husband]; and the [wife] shall be divested of all her right, title and interest in and to same.
“9. The [husband] shall pay to the [wife] the sum of $600.00 per month as periodic alimony for a period of 12 months from the date of the execution of this decree or until such time as of any of the above-listed properties sell, with the exception of the Vincent property, whichever occurs first. Upon the happening of either event the alimony obligation shall cease.
“10. If any of the properties have not sold after a period of 12 months, either party may petition the court to sell said property at public auction.
“11. The [husband] shall have all right, title and interest in and to the mobile home of the parties, and the [wife] is divested of all her right, title and interest in and to same.
“12. The [wife] shall be the sole and separate owner of all the following items of personal property: her rings and her father’s rings; her box collection; her personal pictures; her china and her crystal; her cookbooks; her punch bowl and tray; her personal belongings such as clothes, shoes and makeup; red rocking chair; Sadie’s chair; (2) mirrors and one-half of all the family photographs or copies of same. The [husband] is hereby divested of all his right, title and interest in and to same.
“13. The [husband] shall be the sole and separate owner of all items of personal property presently in his possession which have not been awarded otherwise hereinabove; and the [wife] is hereby divested of all her right, title and interest in and to same.”
The wife was 55 years old at the time of trial. Because she was pregnant at the time the parties married, she dropped out of high school after completing the ninth grade; she did receive her GED in 1974. The wife has held several low-paying jobs over the years, but none of them has required specialized education or training. She has worked at a company called Vulcan Binder, and, most recently, she worked at the Talladega Senior Center in the kitchen. According to the husband, the wife took courses in interior design and in real estate earlier in the marriage, but neither party testified that the wife had ever worked in the fields of real estate or interior design. The wife suffers from arthritis in her hands and hemorrhoids, and she has had carpal-tunnel-release surgeries in both of her hands. The wife had been sitting with two or three elderly and ill persons in the months before the trial, earning $6 per hour, but she had also unsuccessfully sought employment at Vulcan Binder, at Earlyne’s Florist, at a Wal-Mart discount department store, and at a local school lunchroom before trial.
Over the years, the parties had at least two successful family businesses. The husband ran an upholstery shop for several years. Although the wife testified that she had assisted the husband at the shop, the husband indicated that she had helped very little. Later, beginning in the mid to late 1980s and through the mid 1990s, the parties ran a motel. The wife testified that she had worked the desk at the motel and had performed maid services. In addition, she said that, before they could run the motel, it had required extensive renovation and repair, which she said she had assisted in performing. The husband disputed the level of assistance the wife had provided in both the remodel and the running of the motel. The parties also own and run a trailer park.
According to the parties, both of them used drugs during part of the marriage. *1258 The husband admitted that he had used marijuana for several years and that he had tried cocaine once; however, he said that he had stopped using drugs of any kind about nine years before the trial because he was subject to random drug testing by his employer. The husband was once arrested for possession of marijuana in either 1989 or 1990; he pleaded guilty to felony possession and was placed on five years’ probation. The wife was also arrested at the same time, but she pleaded guilty to a misdemeanor charge.
The wife admitted that she had used several different drugs during the marriage, including marijuana, cocaine, crack cocaine, and methamphetamine. The wife also admitted that she had abused alcohol for several years of the marriage; however, she said that she had stopped drinking alcohol in 2000. Although she said that she had stopped abusing drugs in April 2006, the wife admitted that she had used marijuana as recently as October or November 2006, around the time she left the husband. The wife insisted, however, that she had not used any controlled substance since the parties’ separation.
According to the husband, the wife’s drug use and alcoholism was a problem during the marriage. He accused the wife of using rent money she had collected from the trailer park to purchase drugs. He also presented evidence indicating that the wife had allowed people to use rooms at the motel the parties had once operated for free in exchange for drugs.
Although the wife admitted that she had used money for drugs at times instead of using the money for groceries or for bills, she commented that the husband had used those drugs with her. She denied having allowed the use of rooms at the motel in exchange for drugs and denied having traded sexual favors for drugs. She did testify that both parties had consensually engaged in sexual relations outside of the marriage once.
A further point of contention between the parties was the wife’s practice of taking out loans for one of the parties’ adult sons. The wife testified that she had taken out two loans to assist the son during the period when he was running a restaurant. The husband said that the wife may have taken out the loans to assist the son but that the money the son had given the wife to repay the loans had been used for drugs instead.
The husband had worked for Alabama Marble as a crane operator for over 10 years; he also had operated other large equipment for the company as needed. He testified that he had earned $3,400 per month at that job. At the time of trial, however, he was no longer employed by the company. The record does not reveal whether the husband, who was 60 years old at the time of trial, intends to pursue other employment. He did comment that, at his age, he thought that he would have trouble getting hired.
As previously mentioned, the husband and the wife own a trailer park consisting of seven lots, six of which are usually rented for $100 per month. The parcel of property on which the trailer park sits was valued by the wife at $200,000 and by the husband at $100,000. The trial court valued this property at $163,980.[1]
The husband and the wife lived in a mobile home situated on approximately 169 acres of land. The mobile home, according to the vafe, is in a state of disrepair. She said that one could see the *1259 ground through a hole in the floor in the bathroom and that the refrigerator was kept closed by placing a jug of water in front of it. The 169-acre tract was valued at $338,000, or $2,000 per acre, by the wife and at “tax value,” or less than $1,200 per acre, by the husband.[2] The trial court determined the value of the 169-acre tract to be $166,275, or approximately $984 per acre.
The parties also own property upon which sits a motel and a separate restaurant building. Although the parties no longer operate the motel, the restaurant has often been leased to others for operation. It was leased at the time of trial, with rent set at $1,500 per month. The wife valued this property at between $800,000 and $1,000,000, while the husband testified that it was worth less than $900,000. The trial court valued the property at $696,915.
The parties owned two other smaller parcels of real estate. The first parcel is a 1.5-acre parcel along Highway 280, which the wife valued at $100,000 to $150,000. The husband, however, valued that parcel at $50,000. The trial comb set the value of that parcel at $81,990. The other parcel owned by the parties is an eighth of an acre in Vincent, Alabama, to which neither party ascribed a value. The trial court valued this parcel at $8,199.
The parties also owned 20 or more older-model vehicles, which both described as being in varying states of disrepair. The husband described them as rusted and said that any useful parts had long been removed from them; thus, he described them as a pile of scrap metal. They also owned two personal watercraft, neither of which was operational at the time of trial.
As noted above, the wife complains about the division of property and the award of alimony. The trial court has wide discretion over alimony and the division of property, and it may use whatever means are reasonable and necessary to equitably divide the parties’ property. Grimsley v. Grimsley, 545 So.2d 75, 77 (Ala.Civ.App.1989). The only limitation on that discretion is that the division of property must be equitable under the circumstances of the particular case, and the task of determining what is equitable falls to the trial court. Ross v. Ross, 447 So.2d 812, 813 (Ala.Civ.App.1984). The trial court’s judgment is presumed correct and will not be reversed unless it is so unsupported by the evidence as to be unjust and palpably wrong. Grimsley, 545 So.2d at 76. In making a property division, the trial court may consider several factors, including the parties’ respective present and future earning capacities, their ages and health, their conduct, the duration of the marriage, and the value and type of marital property. Lutz v. Lutz, 485 So.2d 1174 (Ala.Civ.App.1986). This court must consider the issues of property division and alimony together when reviewing the decision of the trial court, Albertson v. Albertson, 678 So.2d 118, 120 (Ala.Civ.App.1995), and, because the facts and circumstances of each divorce case are different, this court must also consider the particular facts and circumstances of the case being reviewed. Murphy v. Murphy, 624 So.2d 620, 623 (Ala.Civ.App.1993). However, this court must be mindful that our standard of review is limited, for “ ‘[i]t is not for an appellate court to substitute its judgment for that of the trial court.’ ” Ex parte Moore, 878 So.2d 1161, 1166 (Ala.2003) (quoting Ex parte Durbin, 818 So.2d 404, 409 (Ala.2001)).
The trial court awarded the wife either one-third of the value of the real property *1260 contained in the marital estate or one-third of the proceeds from the sale of that property. The wife made specific requests regarding personal property at trial, and, although a few items she had requested were not awarded to her, by and large, she received what she requested. She was further awarded periodic alimony in the amount of $600 per month until 1 of the parcels of real property, other than the small parcel in Vincent, sells or until the expiration of a 12-month period, whichever occurs first.
At trial, the husband argued vehemently that the wife should not be awarded any of the real property because it was “family land” and because the wife “brought nothing into the marriage.” He also argued that the wife had not contributed to the family wealth through work or otherwise and that she had squandered the family’s earnings on drugs. Notably, at the time of trial the husband was unemployed and had a monthly income of approximately $2,100, provided he had rented six of the seven trailer lots and the restaurant and he received the rents due from each tenant.
At the time of trial, the wife was also unemployed and living with her sister. The wife testified that she had not been assisting her sister with expenses regularly because the wife had earned very little income, but the wife said that both she and her sister felt that the wife owed the sister money for allowing her to live in the sister’s home. The wife also said that she desired to move into a place of her own as soon as she could afford to do so. She estimated that her monthly expenses, were she to move out of her sister’s home, would be $1,869.
The wife presented little testimony regarding the lifestyle the parties had enjoyed during the marriage, other than testifying that the trailer in which they had lived was in disrepair. She specifically commented that the husband’s refusal to upgrade their standard of living had been an issue for her. Thus, based on the evidence, we cannot conclude that the parties lived a lavish or even an upper-middle-class lifestyle; in fact, their lifestyle would likely be best described as modest.
Based on the evidence, the trial court could have been convinced that the wife’s alcoholism and her drug abuse had constituted fault in the marriage. A trial court may consider fault when making a property division, even if it does not grant a fault-based divorce. Ex parte Drummond, 785 So.2d 358, 363 (Ala.2000); TenEyck v. TenEyck, 885 So.2d 146, 155 (Ala.Civ.App.2003). As has often been stated, the trial court’s property division need not be equal, only equitable under the circumstances, and the determination of what is equitable in each circumstance is made by the trial court, not this court. Ross, 447 So.2d at 813. The trial court’s consideration of fault supports its determination that the wife was entitled to less than an equal division of the parties’ assets. Thus, although the division of property favors the husband, we find no error.
The wife disputes the values the trial court assigned to the parties’ real estate. The wife argues that the evidence at trial does not support the valuations selected by the trial court; we disagree. The trial court set the assigned value of the trailer-park parcel and the 1.5-acre parcel on Highway 280 at an amount between the value each party had ascribed to each parcel. The trial court valued the 169-acre parcel at an amount relatively close to but below the husband’s imprecise “less than $1,200 per acre” valuation; it also valued the motel property at an amount below the husband’s imprecise valuation. The husband testified as to why he thought the values of those properties were “less than” certain amounts, noting *1261 that portions of one property flooded and that another portion of the property was unusable because of its topography. As noted above, neither party testified as to the value of the Vincent parcel, to which the trial court ascribed a $8,199 value. We conclude that the values set by the trial court were in line with the general valuation testimony given by the parties.
The wife requests that we reverse the trial court’s judgment because, she says, the record does not contain sufficient evidence of the value of the parties’ real property. She relies on Hurley v. Hurley, 980 So.2d 985, 990 (Ala.Civ.App.2007), in which this court reversed the property division in a divorce judgment because the record contained no evidence regarding the value of several large marital assets or of several expenses of the parties and how they were to be attributed. We find the situation in this case to be distinguishable from the one in Hurley; unlike the situation in Hurley, we have evidence in the present case concerning the value of the parties’ real property, with the exception of the small Vincent parcel, and the trial court itself established a value of each parcel, including the Vincent parcel. Therefore, we decline the wife’s invitation to reverse the trial court’s judgment on the basis of Hurley.
The wife further requests that we reverse the judgment and remand the cause to have the trial court order an appraisal of the parties’ real property in order to establish its value. The parties shared the burden of establishing the worth of their marital property. If either of them had felt that an appraisal of any parcel of property was necessary to establish its value, that party should have sought an appraisal. Either party was permitted to testify regarding their opinion of the value of the marital property; an appraisal was not required to establish the value of the property. See Ingram v. Ingram, 602 So.2d 418, 420 (Ala.Civ.App.1992) (allowing a husband to testify regarding his opinion of the value of the marital residence). We will not reverse the trial court’s division of property because the parties failed to present the necessary evidence to more definitively establish the suggested values of the marital property.
Finally, the wife challenges the trial court’s limitation of rehabilitative alimony to a 12-month period or until 1 of the parcels of real property, other than the small Vincent property, is sold without reserving the right to award permanent periodic alimony. She correctly argues that this court has reversed judgments when trial courts have failed to reserve the right to award permanent periodic alimony in light of the length of the parties’ marriage, the disparity between the earning abilities of the parties, the parties’ future prospects, and other factors. Giardina v. Giardina, 987 So.2d 606, 620 (Ala.Civ.App.2008). As we stated in Giardina:
“As to the [wife’s] argument that the trial court erred by failing to reserve jurisdiction to award her permanent periodic alimony, we note that, because rehabilitative alimony is ‘a sub-class of periodic alimony,’ Jeffcoat[ v. Jeffcoat, 628 So.2d 741, 743 (Ala.Civ.App.1993), overruled on other grounds by Crenshaw v. Crenshaw, 816 So.2d 1046 (Ala.Civ.App.2001) ], the [wife] has the right to seek future modification of her alimony award provided she exercises that right before the end of the three-year [rehabilitative-alimony] period, see Welch v. Welch, 361 So.2d 1090 (Ala.Civ.App.1978), and Banks v. Banks, 336 So.2d 1365 (Ala.Civ.App.1976).
“We acknowledge that some of our prior decisions have implicitly rejected the idea that a spouse who has been *1262 awarded rehabilitative alimony must seek a modification of the award before the expiration date of the rehabilitative-alimony period or be forever barred from receiving periodic alimony. In Fowler v. Fowler, 773 So.2d 491, 495 (Ala.Civ.App.2000), overruled on other grounds by J.L. v. A.Y., 844 So.2d 1221, 1225 (Ala.Civ.App.2002), this court stated:
“ ‘We have previously held that when the court awards rehabilitative alimony based on the earning ability of the parties, their probable future prospects, and the length of the marriage, it is reversible error for the court not to reserve the right to award periodic alimony in the future. See Robinson v. Robinson, 623 So.2d 300 (Ala.Civ.App.1993); Sammons v. Sammons, 598 So.2d 941 (Ala.Civ.App.1992).’ ”
Giardina, 987 So.2d at 620. Based on Giardina, we agree with the wife that the failure to reserve the right to award permanent periodic alimony, even in light of the award of rehabilitative alimony, is error. We therefore reverse the trial court’s judgment insofar as it failed to reserve the right to award permanent periodic alimony and remand the cause for the trial court to do so.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and BRYAN and MOORE, JJ., concur.
THOMAS, J., concurs in part and concurs in the result in part, with writing, which PITTMAN, J., joins.

. The value set by the trial court for each parcel of real property was arrived at by multiplying the "buy-out” amount set by the trial court in its judgment by 3, because the trial court awarded the wife 33 ½% of the marital estate.

. No tax appraisals were introduced into evidence.