PER CURIAM.
Bobbi B. Enzor (“the wife”) appeals, and Stephen B. Enzor (“the husband”) attempts to cross-appeal, from a judgment of the Cherokee Circuit Court divorcing the parties, awarding custody of their two minor children, declining to award postmi-nority educational support with respect to one of the parties’ two adult children, awarding alimony, and dividing and allocating the parties’ marital assets and debts.
*18 The civil action underlying the appeal was filed by the wife in December 2007; a pendente lite custody and support order was entered in January 2008, after which the husband filed an answer and a counterclaim seeking a divorce. Between May 2008 and April 2010, the parties filed numerous motions seeking findings of contempt against each other as to visitation issues, and the trial court held no fewer than 11 hearings in the case at which testimony and exhibits were received, ultimately culminating in a judgment entered on July 15, 2010, that expressly disposed of all claims then pending.
During the 30 days following the entry of that judgment, the wife notified the husband of her intent to relocate to Georgia, and then to Indiana, with the parties’ minor son; the husband filed objections to the proposed relocations; both parties filed motions to alter, amend, or vacate; and both parties filed papers asserting that the other party was in contempt of the final judgment and seeking sanctions therefor.[1] The trial court entered several orders on September 16, 2010, including orders allowing the wife to relocate to Indiana with the minor son and amending certain discrete aspects of its judgment in response to the parties’ postjudgment motions, but it denied all other requested amendments. The wife then moved to vacate the order denying her postjudgment motion and the husband moved to vacate the partial denial of his postjudgment motion, which motions the trial court purported to grant by separate orders on October 5 and October 6, 2010. Those orders, and all further purported amendments to the final judgment, are nullities because a trial court has no jurisdiction to entertain motions that, in effect, seek reconsideration of orders denying postjudgment motions. See Hudson v. Hudson, 963 So.2d 92, 94 (Ala.Civ.App.2007). Under Hudson, then, the time for taking an appeal in this case began running after September 16, 2010.
The wife filed a timely appeal on October 28, 2010, the 42d day after the trial court’s rulings on the parties’ post-judgment motions; however, the husband did not file a notice of appeal until November 15, 2010, which is more than 42 days after the trial court’s rulings on the parties’ postjudgment motions and more than 14 days after the wife filed her notice of appeal. Under Rule 4(a)(2), Ala. R.App. P., only a cross-appeal filed on or before the later of those dates would be timely so as to invoke appellate jurisdiction. Thus, the husband’s cross-appeal is not timely, and it is dismissed pursuant to Rule 4(a)(2), Ala. R.App. P., Hudson, and Wil-coxen.
The wife raises seven issues in her brief on appeal. Viewed together, four of the wife’s seven issues may be classified as assailing the alimony and property-division aspects of the judgment; she also impugns the trial court’s denial of a postminority-support award, the trial court’s denial of an attorney-fee award, and the trial court’s award of custody of the parties’ minor daughter to the husband.
We first address the issue of the minor daughter’s custody. Our review is governed by the following principles:
“Alabama law gives neither parent priority in an initial custody determination. Ex parte Couch, 521 So.2d 987 (Ala.1988). The controlling consideration in such a case is the best interest of the child. Id. In any case in which *19 the court makes findings of fact based on evidence presented ore tenus, an appellate court will presume that the trial court’s judgment based on those findings is correct, and it will reverse that judgment only if it is found to be plainly and palpably wrong. Ex parte Perkins, 646 So.2d 46 (Ala.1994). The presumption of correctness accorded the trial court’s judgment entered after the court has heard evidence presented ore tenus is especially strong in a child-custody case. Id.”
Ex parte Byars, 794 So.2d 345, 347 (Ala. 2001).
The record reveals that the minor daughter, who will attain the age of majority in April 2012, testified in camera that she preferred to live with the husband because she believed that he provided her with “more structure”; she opined that the husband was “dependable” and that he set reasonable rules for her that she respected, and she stated that she could confer with him about anything because “[h]e’s not going to blow up on me or start arguing with me.” In contrast, the wife was described as having profound anger issues by the minor daughter’s piano teacher (a witness subpoenaed by the wife herself), the husband’s mother testified that she had witnessed the wife using excessive corporal punishment upon one of the parties’ older children during their minority, and the minor daughter testified that the wife had repeatedly injected the pending divorce proceeding into their mutual conversations in order to antagonize the minor daughter and had referred to her in conversations with family friends as having been “brainwashed” by the husband. “While not dispositive, the preference of a child with regard to ... custody is entitled to much weight,” Brown v. Brown, 602 So.2d 429, 431 (Ala.Civ.App.1992), and the trial court could have deemed the minor daughter to have been of sufficient age and discretion to merit aligning its custody award with her wishes.
That conclusion is not rendered unsound by the existence of evidence, cited by the wife in her principal brief to this court, that the husband had abused her on certain occasions during the minor daughter’s infancy so as to raise a rebuttable presumption, under Ala.Code 1975, § 30-3-130 et seq., that he should not be the daughter’s custodian for the remainder of her minority. There was no evidence presented indicating that the incidents claimed by the wife to have constituted abuse had any effect upon the minor daughter, a factor that a trial court must consider in determining any custody dispute, regardless of whether a rebuttable presumption may have arisen that an alleged perpetrator of family violence seeks custody of a minor child. See Ala.Code 1975, § 30-3-131. The silence of the record on that point counsels deference to the trial court’s implicit conclusions in favor of the husband. See Smith v. Smith, 887 So.2d 257, 263 (Ala.Civ.App.2003).
We note that, in her reply brief, the wife asserts, for the first time, that the trial court’s custody judgment is also infirm because it separates the 18-year-old minor daughter’s custody from that of the 17-year-old minor son (who, unlike his sister, expressed a strong desire to live with the wife and who has been permitted by the trial court to relocate with her to Indiana). An appellate court cannot consider arguments raised for the first time in an appellant’s reply brief, see Byrd v. Lamar, 846 So.2d 334, 341 (Ala.2002), and we will not do so here.
We next consider the trial court’s property division and alimony award.
“The well-established standard of review is that a divorce judgment based on *20 ore tenus evidence is presumed correct. See Robinson v. Robinson, 795 So.2d 729 (Ala.Civ.App.2001). Such a judgment will be reversed only where it is unsupported by the evidence so as to be plainly and palpably wrong. Id. at 733. On appeal the division of property and the award of alimony are interrelated, and the entire judgment must be considered in determining whether the trial court abused its discretion as to either issue. See O’Neal v. O’Neal, 678 So.2d 161 (Ala.Civ.App.1996). A property division does not have to be equal in order to be equitable based on the particular facts of each case; a determination of what is equitable rests within the sound discretion of the trial court. See Golden v. Golden, 681 So.2d 605 (Ala.Civ.App. 1996).”
Baggett v. Baggett, 855 So.2d 556, 559 (Ala. Civ.App.2003). Under Alabama precedents, a trial court is to consider a number of factors when determining a party’s need for alimony and when dividing marital property, including “ ‘the length of the marriage, the age and health of the parties, the future employment prospects of the parties, the source, value, and type of property owned, and the standard of living to which the parties have become accustomed during the marriage.’” Ex parte Elliott, 782 So.2d 308, 311 (Ala.2000) (quoting Nowell v. Nowell, 474 So.2d 1128, 1129 (Ala.Civ.App.1985)). The trial court’s judgment expressly notes that those factors were considered.
In its judgment, the trial court awarded the wife a 2007 Buick automobile (subject to the debt thereon), an array of banking and investment accounts evidenced as being worth $153,878.08, and dividends held in her counsel’s trust account amounting to $761.81. The husband was awarded, in addition to the marital residence in Alabama, several motor vehicles older than the wife’s automobile and banking and investment accounts worth $157,366. Although the wife contends in her principal appellate brief, based upon the value of the marital residence as calculated by local taxing authorities, that the husband received an asset worth $548,240 (which, she says, represented “overwhelmingly” the most valuable marital asset), the ■wife herself admitted in her testimony that that valuation was too high in light of current real-property-market conditions. In contrast, the husband, who had occupied the marital residence with the wife before their separation and without the wife after the entry of a pendente lite order (and who was therefore competent to testify as to its value, see Ingram v. Ingram, 602 So.2d 418, 420 (Ala.Civ.App. 1992)), opined that the residence would, if ordered sold, yield as little as $275,000 in proceeds and observed that the indebtedness on the residence was just over $174,000, indicating a potential equity position of only about $101,000. Clearly, the trial court could have credited the husband’s valuation and was not bound to accept the wife’s valuation; further, the trial court, as the trier of fact, could properly have declined to accept as conclusive the wife’s valuation opinion. See Childs v. Huff, 586 So.2d 939, 941 (Ala.Civ.App. 1991).[2]
Taking the husband’s suggested valuation figures as true, the wife was awarded *21 specific assets worth at least $154,689.89, whereas the husband was awarded specific assets worth approximately $258,366 (but was also allocated a $25,000 corporate debt).[3] Thus, of the parties’ net identified assets worth just over $888,000, the wife received a share of approximately 40%. However, as the husband notes in his appellate brief, the parties were also awarded “all personal property within his or her respective possession and control as of the date of’ the final judgment, and the husband testified that the wife had stripped the marital residence of its furnishings just after the husband was awarded pendente lite possession thereof — items of personal property that were never restored to the husband and which were awarded to the wife in the trial court’s judgment. Finally, the wife was awarded three years of monthly rehabilitative-alimony payments of $1,833, or a total of $65,988. Viewed in the aggregate, then, we cannot conclude that the property and alimony provisions of the trial court’s judgment are inequitable.[4]
The wife also contends that the trial court erred in failing to reserve the issue of periodic alimony for subsequent adjudication in a modification proceeding, citing, among other cases, the main opinion in Edwards v. Edwards, 26 So.3d 1254 (Ala.Civ.App.2009), for the proposition that when a trial court awards “rehabilitative” alimony, it is reversible error for the court not to reserve the right to award “periodic” alimony in the future. See also Fowler v. Fowler, 773 So.2d 491, 495 (Ala.Civ.App. 2000). We note that two judges disagreed with the main opinion in Edwards as to the necessity of reserving the issue of periodic alimony when rehabilitative alimony has been awarded. 26 So.3d at 1262 (Thomas, J., concurring in part and concurring in the result in part, joined by Pittman, J.).
Upon reevaluation of the essential nature and purpose of rehabilitative alimony, which this court has correctly described as being a mere subclass of periodic alimony that allows a spouse time to begin (or to resume) supporting himself or herself, see Giardina v. Giardina, 987 So.2d 606, 620 (Ala.Civ.App.2008), a majority of this court is now convinced that we should not reverse a judgment when the trial court has failed to reserve the right to award something it has already awarded. When a trial court awards limited or “rehabilitative” alimony, that court has in fact exer *22 cised its power to award alimony and may modify that award at any time, on petition of either party, before the award expires. See, e.g., Treusdell v. Treusdell, 671 So.2d 699, 704 (Ala.Civ.App.1995) (three-year award of periodic alimony described as rehabilitative in nature and “subject to future modification, including extension and increase, upon changed circumstances”). In this case, the wife’s rehabilitative-alimony award extends into mid-2013, and the wife may seek a modification of her rehabilitative-alimony award at any time before its expiration. Our adoption of this view warrants affirmance of the trial court’s judgment notwithstanding its failure to expressly state that the wife has a right to seek such a modification. Cf. Rule 52(a), Ala. R. Civ. P. (noting that the inclusion of factual findings and statements of conclusions of law in a judgment is not mandatory except when required by statute). To the extent that the main opinions in Edwards, Giardina, and similar cases hold to the contrary, they are overruled.
Citing only Ex parte Bayliss, 550 So.2d 986 (Ala.1989), as authority, the wife also contends that the husband should have been compelled to pay part of the educational expenses of the parties’ second daughter, who was a college student at the time of trial.[5] The trial court, in denying that relief, opined that it had considered “each child’s relationship with each parent and each child’s responsiveness to parental advice and guidance,” and, with specific reference to the second daughter, that court determined that, as to the husband, “she was neither forthcoming or truthful concerning her education expenses, and, through the same processes, without reason, increased her education/living expenses.” We note that “[citations to general authority do not meet the requirements of Rule 28, Ala. RApp. P.,” so as to warrant substantive appellate review of an issue. Stockton v. CKPD Dev. Co., 936 So.2d 1065, 1078-79 (Ala.Civ.App.2005). However, even were this issue properly presented for review, affirmance would be warranted on the basis of the husband’s testimony that the second daughter had deliberately prevented the husband from accessing pertinent financial records from her college; had abused the scope of the trial court’s pen-dente lite postminority-support order by submitting to the husband for reimbursement receipts for plainly noneducational expenses such as gasoline, video discs, and candy; and had refused to communicate with the husband about expense matters, stating: “[M]om said I don’t have to do it. You just have to pay.” See Bayliss v. Bayliss, 575 So.2d 1117, 1121 (Ala.Civ. App.1990) (acknowledging principle that repudiation of parent by adult child and unreasonable refusal to associate with the parent will warrant denial of postminority support).
Finally, the wife contends that the trial court erred in failing to award her an attorney fee. The award of an attorney fee in a divorce case is within the sound discretion of the trial court and will not be reversed except for an abuse of discretion; the factors to be considered by the trial court in a divorce action in making an attorney-fee award include the results of the litigation. Korn v. Korn, 867 So.2d 338, 346-47 (Ala.Civ.App.2003) (quoting Brasfield v. Brasfield, 679 So.2d 1091,1095 (Ala.Civ.App.1996)). In this case, neither party was awarded sole custody of both *23 minor children, as had been requested; the wife’s postminority-support request as to the second daughter was properly denied; the wife was found in contempt of court for having failed to pay pendente lite support; and the wife was specifically found to have primarily caused the trial court to have had to “micromanage the issues such as temporary visitation in this cause.” Considering the outcome of the litigation and the culpable conduct on the wife’s part, we cannot conclude that the denial of an attorney-fee award was outside the trial court’s discretion.
AFFIRMED AS TO THE APPEAL; CROSS-APPEAL DISMISSED.
THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.
MOORE, J., concurs in part and dissents in part, with writing.

. As noted in Decker v. Decker, 984 So.2d 1216, 1220 (Ala.Civ.App.2007), under Wilcoxen v. Wilcoxen, 907 So.2d 447, 449 n. 1 (Ala. Civ.App.2005), the parties' postjudgment contempt motions did not affect the finality of the trial court's judgment and postjudgment orders because they, in effect, initiated new actions unrelated to the divorce proceeding.

. Assuming that it was preserved for appellate review, the wife's claim that the trial court has somehow unconstitutionally divested her of her interest in the marital residence while leaving intact her personal responsibility for the indebtedness thereon is flatly contradicted by the trial court’s provision in its judgment that the husband "shall be solely responsible for the debt owed on the residence and shall hold the [wife] harmless for any default in the repayment thereof.”

. Although the wife elicited testimony from her own father, who has a financial-analysis vocational background, to the effect that he could not account for some $40,000 in lost value of the parties' assets over the nine months following the date that the wife filed her divorce complaint in December 2007, the husband testified that the parties’ investment holdings had suffered significant reversals as a result of the general stock-market declines in 2008. The trial court, rather than believing that the husband had necessarily squandered marital assets, may well have deemed the losses suffered by the parties to have been “in common with the losses sustained by millions of wise and prudent investors” during that period. First Nat'l Bank of Birmingham v. Basham, 238 Ala. 500, 511, 191 So. 873, 882 (1939).

. We reach this conclusion despite the wife's claim that the husband should be punished for his having committed adultery. The trial court did not divorce the parties on that ground, however; the parties were instead divorced on the grounds of incompatibility of temperament and irretrievable breakdown of the marriage. When such grounds exist, and when (as in this case) the adulterous spouse's conduct is not the sole contributing factor in the divorce (a fact that the trial court noted in finding that "strife and discord has existed for some time in this relationship arising from several sources including both the [wife] and the [husband]"), a trial court does not act outside its discretion in failing to monetarily punish the adulterous spouse in its property and alimony awards. See Boothe v. Boothe, 564 So.2d 995, 996 (Ala.Civ.App.1990).

. As to the parties' minor daughter, the husband was directed to be responsible for 75% of her postminority education expenses, with the wife being responsible for 25% thereof; the issue of the minor son’s postminority support was reserved for later adjudication by the trial court.