THOMPSON, Presiding Judge.
Derek Anthony Santiago (“the husband”) appeals, and Jenny Kim Santiago (“the wife”) cross-appeals, from the judgment of the Madison Circuit Court (“the trial court”) modifying the parties’ June 29, 2010, divorce judgment.
The parties’ divorce was uncontested. The divorce judgment incorporated the terms of a settlement agreement reached by the parties on May 19, 2010. Pursuant to the settlement agreement, the divorce judgment divided the marital property and awarded the parties joint legal and physical custody of their two minor children. Among other things, the divorce judgment awarded the wife a portion (30% or $919.40, whichever is greater) per month of the husband’s military-retirement income; it also awarded her one-half the balance of the husband’s Individual Retirement Account (“IRA”) and one-half of the balance of his 401 (k) retirement account. The divorce judgment, subject to certain conditions, ordered the wife to convey to the husband her one-half interest in the marital home and for the husband to pay the wife her one-half equity in the home; the divorce judgment also permitted the wife to remain in the marital home for 90 days following the entry of the divorce judgment, with the husband being responsible for the mortgage payments and certain utility and other household expenses.
Regarding child support and alimony, the divorce judgment ordered the husband to pay the wife child support in the amount of $808 per month and alimony in the amount of $1,000 per month for five years. The divorce judgment also ordered the husband to maintain the children on his health-insurance policy and to pay for their “medicine” and co-pays not covered by insurance. The divorce judgment further ordered the husband to pay for the children’s reasonable college expenses. The divorce judgment noted that the child-support guidelines under Rule 32, Ala. R. Jud. Admin., had not been followed because the parties had agreed to a true joint-custody arrangement. Neither party appealed the divorce judgment.[1]
On October 1, 2010, only three months and a few days after the entry of the parties’ divorce judgment, the husband filed in the trial court a petition to modify his child-support obligation under the divorce judgment. In his petition, the husband alleged that the wife had become gainfully employed and that her employment constituted a material change of circumstances warranting a recalculation of child support. The husband specifically requested that the trial court “re-calculate child support based on the parties’ current income and modify the amount of child support to be paid by the [husband] to the [wife] making it retro-active from the time of filing this Petition.” The husband also sought an attorney fee.
On October 21, 2010, the wife, proceeding pro se, filed an “Answer/Counter Petition,” and on October 29, 2010, the wife, represented by counsel,[2] filed an amended *1273 answer and counterclaimed to modify the husband’s child-support obligation under the divorce judgment. Although in her answer the wife denied that her employment constituted a material change of circumstances warranting modification of the husband’s child-support obligation, the wife alleged in her counterclaim that the husband was paying 20% less than required under Rule 32, Ala. R. Jud. Admin., and that that fact constituted a material change of circumstances warranting a recalculation of his child-support obligation. The wife requested that the trial court recalculate the amount of child support to be paid by the husband pursuant to Rule 32, Ala. R.J. Admin., and to make it retroactive from the time of the filing of his petition. The wife also sought an attorney fee.
On March 9, 2011, the husband filed an amended petition to modify the divorce judgment. In his amended petition, the husband alleged that the wife’s employment, as well as her receipt of a portion of his monthly military-retirement income pursuant to the divorce judgment, constituted a material change of circumstance warranting a recalculation of child support based on the parties’ current income. In addition, the husband requested that the trial court order the wife to pay one-half of the uncovered medical expenses and co-pays for the children and to further order the wife to pay a pro rata share of college expenses for the children. The husband requested, in the alternative, that the trial court order a lesser amount of periodic alimony or terminate his periodic-alimony obligation.
On April 7, 2011, the wife filed an amended petition to modify the divorce judgment. In her amended petition, the wife alleged that there had been a material change in circumstances such that she required an increase in periodic alimony and an increase in the duration of periodic alimony because, among other reasons, she wanted to pursue additional training and education to help her obtain employment that would sufficiently cover her monthly living expenses and allow her to support herself in the future. The wife also sought an attorney fee.
The trial court held an ore tenus hearing on November 28, 2011. Shortly thereafter, on December 12, 2011, the trial court entered a modification judgment that, among other things, increased the husband’s child-support obligation from $808 per month to $1,496.70 per month and terminated his periodic-alimony obligation. The modification judgment ordered, in part:
“1. The court GRANTS the request of [the husband] to re-calculate child support based on the parties’ current income. The Court determines the support the [husband] shall pay to the [wife] towards the support and maintenance of the parties’ minor children [is] the sum of ONE THOUSAND FOUR HUNDRED AND NINETY-SIX AND 70/100 ($1,496.70) DOLLARS, per month. This modification is made retroactive from the filing of this petition. The child support guidelines set forth in Rule 32, [Ala. R. Jud. Admin.,] have been followed and applied.
“2. The Court concludes the [wife’s] earnings constitute a material change of circumstances. The alimony award is hereby TERMINATED, effective January, 2012. The [husband’s] request for retroactive termination of alimony is hereby DENIED.
“3. All remaining claims of the parties not ruled on herein are hereby DENIED.
*1274 “4. All other provisions of the Divorce Judgment shall remain in effect.”
(Capitalization in original.)
Thereafter, both parties filed timely postjudgment motions that were denied by the trial court on February 29, 2012. The husband timely appealed, and the wife timely cross-appealed.

Appeal

The husband contends on appeal that the trial court abused its discretion in increasing his child-support obligation because, he maintains, the wife failed to present sufficient evidence of a material change of circumstances to warrant the increase. We find the husband’s contention to be without merit. The husband bases this contention on the faulty premise that the trial court granted the wife’s request to modify child support when, in fact, the trial court, in the modification judgment, specifically “GRANTfED] the request of [the husband] to re-calculate child support based on the parties’ current income.” (Capitalization in original.) We note that the proceedings below were initiated by the husband by filing a petition to modify his child-support obligation under the divorce judgment; as previously stated, in his petition the husband alleged that the wife had become gainfully employed and that her employment constituted a material change of circumstances warranting a recalculation of child support based on the parties’ current income. In his amended petition, the husband alleged that the wife’s employment, as well as her receipt of a portion of his monthly military-retirement income pursuant to the divorce judgment, constituted a material change of circumstances warranting a recalculation of child support based on the parties’ current income. We recognize that the wife counterpetitioned for an increase in child support, but the trial court specifically granted the husband’s petition to modify his child-support obligation based on the parties’ current income. Although the husband’s petition resulted in an increase in his child-support obligation, rather than the decrease he apparently had hoped for, he is not now in a position to complain. Therefore, as to the husband’s appeal, we affirm the judgment insofar as it modified the husband’s child-support obligation.

Cross-appeal

In her cross-appeal, the wife first contends that the trial court failed to grant her a “sum certain” amount of retroactive child support that, she maintains, was required pursuant to § 30-3-114, Ala.Code 1975. We find the wife’s reliance on § 30-3-114 to be misplaced. See Calloway v. Mitchell, 718 So.2d 65, 68 (Ala.Civ.App.1998) (Section 30-3-114 does not apply in proceedings in which child support previously has been ordered pursuant to a divorce judgment, per § 30-3-110, Ala.Code 1975).
Sections 30-3-110 and 30-3-114 were enacted as part of the same act, Act No. 94-213, Ala. Acts 1994, and must be read together. See Locke v. Wheat, 350 So.2d 451, 453 (Ala.1977) (noting the general proposition that statutory sections dealing with the same subject matter are to be read in pari materia). Section 30-3-110, the first section of that act, provides, in part:
“There is hereby created a civil action to establish an order of retroactive [child] support which may be brought against a non-supporting parent who has a duty to support as the legal parent of a child or children but has failed to provide support.An action under this section can be brought only if support has' not previously been ordered pursuant to a divorce or other action in this or any other jurisdiction.”
*1275 Section 80-3-114, cited by the wife, provides in part that “[t]he order of retroactive [child] support shall be a sura certain judgment and may cover all periods in which the non-supporting parent failed to provide support.”
In Calloway, supra, this court concluded that the father in that case was precluded from bringing an action for retroactive child support under § 30-3-110 when the issue of child support previously had been addressed in the parties’ divorce judgment. In so doing, this court reasoned:
“By Act No. 94-213, § 1, Ala. Acts 1994, codified at § 30-3-110, the legislature created ‘a civil action to establish an order of retroactive support which may be brought against a non-supporting parent who has a duty to support as the legal parent of a child or children but has failed to provide support.’ The last sentence of § 30-3-110 states: ‘An action under this section can be brought only if support has not previously been ordered pursuant to a divorce or other action in this or any other jurisdiction.’
“Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says.’ IMED Corp. v. Systems Engineering Assocs. Corp., 602 So.2d 344, 346 (Ala.1992).”
Calloway, 718 So.2d at 68.
In the present case, it is undisputed that the issue of child support previously has been addressed in the parties’ divorce judgment; thus, neither § 30-3-110 nor § 30-3-114 apply to the facts of this case. See Calloway, supra.
Next, the wife contends that the trial court abused its discretion in terminating the husband’s periodic-alimony obligation. We agree. At the outset, we note that the ore tenus rule applies to our review of the facts of this case. See Raidt v. Crane, 342 So.2d 358, 360 (Ala.1977) (“It is axiomatic that where the evidence has been taken ore tenus, a presumption of correctness attends the trial court’s conclusion on issues of fact, and [an appellate court] will not disturb the trial court’s conclusion unless it is clearly erroneous and against the great weight of the evidence, but will affirm the judgment if, under any reasonable aspect, it is supported by credible evidence.”).
At the time of their divorce in June 2010, the parties had been married more than 16 years. At that time, the wife was 43 years old and the husband was 47 years old. Two children were born of the marriage — a daughter and a son. At the time of the divorce, the daughter was 16 years old and the son was 13 years old. The wife is a native of Korea; she left Korea in 1989. The husband has a military background, having formerly served in the United States Army.
At the time of the parties’ divorce and at the time of the modification hearing, the husband worked for a research and technology corporation. The husband has a master’s degree in acquisition accounting and contracting and a professional certification in contracting. At the time of the parties’ divorce, the wife had just begun working at a clothing store as a trainee; she was not working when the parties signed the settlement agreement in May 2010. At the time of the modification hearing, the wife was working as a part-time manager at the clothing store.
During most of the parties’ marriage, the husband was the sole wage earner and source of income for the parties. The wife worked at least part time during 2003 through 2006, starting out as a cosmetic sales associate and ending as an assistant manager at a “PX,” or “post exchange,” *1276 store on a military base. The husband testified that the wife also had done “things on her own,” such as “cleaning houses [and] making stuff for people” and “house sitting.” According to the husband, the wife’s money had not gone to pay household bills, explaining that “her money was her money and my money was our money.”
During spring 2010, the parties discussed divorce, and, at the same time, they also discussed the wife’s seeking employment. During those conversations, they discussed the possibility of the wife’s starting her own cleaning business, and the husband printed the wife business cards and brochures regarding that possible business venture. At the time the parties signed the settlement agreement in which the husband agreed to pay the wife monthly periodic alimony in the amount of $1,000 for five years, the wife was not employed but the husband was aware that she was looking for employment. The settlement agreement that was incorporated into the divorce judgment does not mention the wife’s efforts to find employment and does not state that periodic alimony will terminate if the wife becomes employed.
Regarding the husband’s income, at the time of the parties’ divorce in June 2010, the husband’s gross pay from his employment totaled $3,993.11 every two weeks, based on an hourly rate of $47.51 plus $192.31 in “[b]enefits.” Beginning in January 2011, the husband’s gross pay from his employment totaled $4,069.11 every two weeks, based on an hourly rate of $48.60 plus $192.31 in “[b]enefits.” In addition to his regular pay, the husband also received bonus income; during November 2010 the husband received a $12,000 bonus, during May 2011 the husband received a $500 bonus, and during September 2011 the husband received a $750 bonus. The husband testified that his 2010 bonus income totaled $13,750. Although bonus income was not guaranteed, the husband expected to receive similar bonus income during 2011. The husband’s 2010 federal income-tax return reflects that his gross taxable income from his employment totaled $106,208; his accompanying W-2 form reflects total gross pay in the amount of $117,496.48. The difference in his gross pay and his gross taxable income is attributable to pre-tax income that was deposited into his 401(k) retirement account ($7,779.17), into a “Medical FSA” account ($2,499.90), and into an account designated as “Other Cafe 125” ($1,009.12). During 2010, the husband received $635 for officiating football games, and he expected to receive $800-$900 for officiating football games during 2011. At the time of the modification hearing, the husband was paid $2,315.60 per month in military-retirement income, and the wife was paid $992.40 per month in the husband’s military-retirement income, per the parties’ divorce judgment. At the time of the parties’ divorce and at the time of the modification hearing, the husband also received $857 per month in Veterans Administration disability benefits.[3]
*1277 Regarding the wife’s income, shortly after the parties signed the settlement agreement but before the divorce judgment was entered, the wife became employed at a clothing store on June 10, 2010; she began at a rate of $9.50 per hour, and during fall 2010 that rate was increased to $12 per hour. At the time of the modification hearing, she worked approximately 30 hours per week earning $12 per hour for a total of approximately $1,560 per month. Following the parties’ divorce and per the parties’ divorce judgment, the wife remained in the parties’ marital home for approximately three months after the divorce and then moved out; around the time that she moved out, the husband paid the wife $20,000, representing her share of the equity in the marital home.
The wife has the equivalent of a high-school education and attended a community college in Korea. Following her move to the United States, the wife took some classes relating to cosmetics. According to the wife, she has language barriers; she describes her oral communication skills as average, stating: “I think I understand English better that I talk”; she describes her writing skills as poor. The wife testified that she believed that her inability to speak English well had impacted her ability to find employment.
The wife testified that she receives no benefits from her employment and that she has not been offered full-time employment. She also testified that she is not offered overtime. She testified that she does not receive bonuses and does not anticipate a raise. She testified that she has been trying to look for other employment. The wife testified that she would like to return to school to complete her education but that she did not have the money to pay for it. The wife testified that, although her income was sufficient to meet her present monthly expenses, she lived “paycheck to paycheck” and had no income to invest in retirement. The wife has $10,000 in a savings account that she wants to reserve for emergencies for the children. She also testified that she has approximately $30,000-$31,000 in a retirement account derived from the husband’s 401(k) account. The wife testified that the expenses she incurs for the children had increased, as had her household expenses. The wife described her postdivorce standard of living as being lower than when she was married to the husband, pointing out, for instance, that during the parties’ marriage she had purchased higher quality meat for the family and had shopped for her clothes at a nice department store but that, since the divorce, she shopped at discount department stores, such as TJMaxx. The wife testified that she had not been able to pay her attorney fee at the time she filed her answer and counterclaim, so she had charged that expense on a credit card. The wife had two different attorneys represent her at the trial-court level, and her attorney fees at the time of the modification hearing totaled approximately $5,967.50. The wife testified that she was not able to pay her attorney fees “comfortably.”
The record contains statements regarding both parties’’ monthly living expenses; all of those statements include expenses for and/or allocated to the children. In her October 2010 pro se answer and coun-terpetition, the wife alleged that her monthly expenses totaled approximately $2,795; that initial pro se answer and *1278 counterpetition was discussed during the wife’s testimony at the modification hearing, but it was not admitted into evidence. In her February 2011 answer to the husband’s interrogatory question regarding her average monthly expenses, the wife responded that her average monthly expenses totaled $2,710.44; that response was admitted into evidence.
The wife also compiled a monthly budget during fall 2011 after saving a years’ worth of receipts and looking at expenses for a year; that budget statement also was admitted into evidence and reflects that the wife’s monthly expenses totaled $4,092.
The husband also prepared a monthly expenditures statement; that statement also was admitted into evidence and reflects that, in addition to his existing child-support and periodic-alimony obligations, the husband’s monthly expenses totaled $6,539. In addition to typical monthly living expenses, the husband included, among other things, $485.05 for hair restoration and $510.75 for legal fees.[4]
Periodic alimony and its subsequent modification are matters resting within the sound discretion of the trial court, and the trial court’s judgment as to those issues will not be reversed absent a showing of an abuse of discretion. Tiongson v. Tiongson, 765 So.2d 643, 645 (Ala.Civ.App.1999).
In Bray v. Bray, 979 So.2d 798 (Ala.Civ.App.2007), this court set forth the applicable standard of review as follows:
“ ‘Our standard of review when reviewing an appeal from a judgment granting or denying a requested modification of alimony is well settled.
“ ‘ “An obligation to pay alimony may be modified only upon a showing of a material change in circumstances that has occurred since the trial court’s previous judgment, and the burden is on the party seeking a modification to make this showing. ...”
“ ‘Glover v. Glover, 730 So.2d 218, 220 (Ala.Civ.App.1998) (citation omitted).’
“Ederer v. Ederer, 900 So.2d 427, 428 (Ala.Civ.App.2004).
“ ‘Where a trial court receives ore tenus evidence, its judgment based on that evidence is entitled to a presumption of correctness on appeal and will not be reversed absent a showing that the trial court abused its discretion or that the judgment is so unsupported by the evidence as to be plainly and palpably wrong.’
“Sellers v. Sellers, 893 So.2d 456, 457-58 (Ala.Civ.App.2004).”
979 So.2d at 800.
Even if a material change of circumstances is shown, a trial court is not required to modify alimony. Kiefer v. Kiefer, 671 So.2d 710, 711 (Ala.Civ.App.1995) (citing Mullins v. Mullins, 475 So.2d 578 (Ala.Civ.App.1985)). Factors the trial court should consider in determining whether to modify an alimony award include, among other things, the earning capacity of each spouse, the payee spouse’s need for alimony, the payor spouse’s ability to pay alimony, and each spouse’s es *1279 tate. Kiefer, 671 So.2d at 711 (citing Posey v. Posey, 634 So.2d 571 (Ala.Civ.App.1994)). When, as in this case, a provision awarding periodic alimony is based upon the agreement of the parties, that provision should not be modified without close scrutiny, see, e.g., Trammell v. Trammell, 589 So.2d 743 (Ala.Civ.App.1991), especially when a short time, in this case only approximately 17 months, separates the modification hearing from the previous entry of the divorce judgment. See Jeffcoat v. Jeffcoat, 423 So.2d 888 (Ala.Civ.App.1982), Roberts v. Roberts, 395 So.2d 1035 (Ala.Civ.App.1981), and Taylor v. Taylor, 369 So.2d 1240 (Ala.Civ.App.1979) (cases involving a relatively short period separating the entry of the divorce judgment from the modification hearing; in each case, the period was less than two years).
In the present case, the divorce judgment was entered only a little more than three months before the husband filed his petition to modify. The divorce judgment, as agreed between the parties, awarded the wife monthly periodic alimony in the amount of $1,000 for five years. We construe this limited periodic-alimony award to be in the nature of rehabilitative alimony. See, e.g., Treusdell v. Treusdell, 671 So.2d 699, 704 (Ala.Civ.App.1995) (three-year award of periodic alimony construed as being in the nature of rehabilitative alimony). The purpose of rehabilitative alimony, which has been described by this court as being a subclass of periodic alimony, is to allow a spouse to begin or resume supporting himself or herself. See, e.g., Alfred v. Alfred, 89 So.3d 786, 790 (Ala.Civ.App.2012); Enzor v. Enzor, 98 So.3d 15, 21 (Ala.Civ.App.2011). See also Benson v. Benson, 876 So.2d 1157, 1164 (Ala.Civ.App.2003) (“‘This court has defined rehabilitative alimony as “a sub-class of periodic alimony” that allows a spouse “time to reestablish a self-supporting status.” ’ ” (quoting Fowler v. Fowler, 773 So.2d 491, 495 (Ala.Civ.App.2000) (overruled on other grounds, Enzor, supra), quoting in turn Jeffcoat v. Jeffcoat, 628 So.2d 741, 743 (Ala.Civ.App.1993) (overruled on other grounds, Crenshaw v. Crenshaw, 816 So.2d 1046 (Ala.Civ.App.2001)))). “ ‘[Rjehabilitative alimony[ ]’ ... generally connotes an attempt to encourage a dependent spouse to become self-supporting by providing alimony for a limited period of time during which gainful employment can be obtained.” Molnar v. Molnar, 173 W.Va. 200, 202, 314 S.E.2d 73, 76 (1984). Rehabilitative alimony is intended to provide support for a dependent spouse for a limited period of reeducation or retraining following a divorce so that the dependent spouse may gain skills to become self-sufficient. See Enzor, 98 So.3d at 23. Regarding alimony in general, this court in Korn v. Korn, 867 So.2d 338, 345-46 (Ala.Civ.App.2003), stated:
“Under Alabama law, periodic alimony ‘is to support the former dependent spouse and enable that spouse, to the extent possible, to maintain the status that the parties had enjoyed during the marriage, until that spouse is self-supporting or maintaining a lifestyle or status similar to the one enjoyed during the marriage.’ O’Neal v. O’Neal, 678 So.2d 161, 164 (Ala.Civ.App.1996).”
Our review of the facts in the present case convinces us that the trial court abused its discretion in terminating the husband’s periodic-alimony obligation. Given the fact that the husband knew that the wife was looking for employment at the time he agreed to pay her periodic alimony in the amount of $1,000 per month for five years, we are not convinced that the wife’s part-time employment that pays only $12 per hour amounts to a material change of circumstances warranting a termination of the husband’s periodic-alimony obligation. Even if the wife’s part-time *1280 employment amounts to a material change of circumstances, that fact alone does not justify the termination of the husband’s five-year periodic-alimony obligation based on the unique and particular facts of this case.
In so holding, we note that the parties’ divorce and modification proceedings all occurred within a relatively short period. The parties divorced in June 2010; the husband filed his petition to modify child support in October 2010; he then filed his amended petition to modify both child support and alimony in March 2011; and the modification hearing was held in November 2011.
In this instance, the husband is highly educated and has a much higher earning capacity than the wife, who has the equivalent of a high-school education. The wife also has language barriers. During 2010, the year in which the parties divorced, the husband’s gross pay from his employment totaled $117,496.48; although his gross taxable income for federal income-tax purposes from that employment totaled $106,208, the difference in gross pay and gross taxable income resulted in large part from his deferring otherwise taxable income in the amount of $7,779.17 by contributing that amount to his 401 (k) account. Beginning in January 2011, the husband received an small raise in his regular pay. In addition, although bonuses are not guaranteed, the husband expected to receive over $10,000 annually in bonus income. The husband also was paid $2,315.60 per month in military-retirement income and $857 per month in disability benefits.
The wife, on the other hand, was not working at the time the parties signed the settlement agreement. Although the wife was not working at that time, the husband knew that she was looking for employment. The wife began working part time at the clothing store shortly before the divorce judgment was entered. At the time of the modification hearing, the wife earned $12 an hour working approximately 30 hours per week; that amount totaled approximately $1,560 per month. She did not anticipate receiving a raise or bonus or additional work hours. The wife also was paid $992.40 per month in the husband’s military-retirement income.
The parties were married for over 16 years, and the wife worked for a relatively small amount of time during the parties’ marriage. At the time of the parties’ divorce, their younger child was 13 years old and the end of the husband’s 5-year periodic-alimony-obligation period essentially coincides with the time that that child would be expected to graduate from high school. The wife, who was either prevented because of the marriage from pursuing, or chose not to pursue an education or self-supporting employment, should now be allowed an opportunity to become self-supporting. The wife testified that she would like to return to school to complete her education but that she did not have the money to pay for it.
The wife, consistent with the purpose of rehabilitative alimony, should be permitted a reasonable amount of time to transition from financial dependence on the husband to financial independence. In this instance, the wife desires to pursue additional education in order to obtain better employment than a part-time job paying $12 per hour. Although the wife may be able to meet most of her current monthly expenses with her current part-time employment income, her portion of the husband’s military-retirement income, and the increase in child support ordered by the trial court in this case, we cannot hold that the wife is financially independent without the husband’s alimony payment based on the facts of this particular case and given the *1281 nature and purpose of rehabilitative alimony.
Finally, the wife contends that the trial court abused its discretion in failing to award her an attorney fee. We agree.
“This court reviews an award of an attorney fee on an abuse-of-discretion standard.” Mahaffey v. Mahaffey, 806 So.2d 1286, 1292 (Ala.Civ.App.2001). In determining whether to award an attorney fee and the amount of the fee, the trial court must consider factors such as the earning capacities of the parties, the results of the litigation, the parties’ financial circumstances, and the conduct of the parties. Korn v. Korn, 867 So.2d at 347; Glover v. Glover, 678 So.2d 174, 176 (Ala.Civ.App.1996).
In the present case, the husband has a much higher earning capacity than the wife. The husband’s financial circumstances are much better than the wife’s financial circumstances. The husband, within a relatively short period following the divorce judgment, initiated the modification proceedings below by first seeking to modify his child-support obligation and then later by also seeking, among other things, to terminate his periodic-alimony obligation. The results of the litigation have been favorable for the wife. Based on the facts of this particular case, we hold that the trial court abused its discretion in denying the wife’s request for an attorney fee in the amount of $5,967.50.
Accordingly, with respect to the wife’s cross-appeal, the judgment of the trial court is affirmed in part and reversed in part, and this cause is remanded for an order consistent with the opinion.
The husband’s request for an attorney fee on appeal is denied. The wife’s request for an attorney fee on appeal is granted in the amount of $8,500.
APPEAL — AFFIRMED.
CROSS-APPEAL — AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
PITTMAN, THOMAS, and DONALDSON, JJ., concur.
MOORE, J., concurs in the result, with writing.

. Regarding the parties’ divorce, we note that the parties signed a divorce agreement on May 11, 2010, approximately one week before they signed the settlement agreement on May 19, 2010. At the time the parties signed the divorce agreement, they were not represented by legal counsel. Apparently, an attorney helped them with the divorce “paperwork” by finalizing the settlement agreement (incorporating the divorce agreement) and also by assisting them with the completion of the “CS” child-support forms required pursuant to Rule 32, Ala. R. Jud. Admin.

. The wife initially was represented by the attorney who helped the parties with their divorce. See note 1, supra. That attorney *1273 later withdrew, and the wife thereafter was represented by different legal counsel.

. We note that the evidence contained in the record regarding the correct amount of the husband’s income for purposes of determining his child-support and periodic-alimony obligations is somewhat confusing because the husband appears to base such obligations primarily on what he considers to be his "net income” rather than his income/benefits that are actually available for such considerations. For example, the husband’s amount of "gross income” on his Form 41, Child-Support-Obligation Income Statement/Affidavit, both at the time of the divorce and at the time of the modification hearing, does not appear to correspond to other more credible evidence in the record as to the amount that should have been reported. We note that the husband's earnings statements for pay period *1277 ending June 19, 2010, through the pay period ending September 9, 2011, and his 2010 federal and state income-tax returns reveal that the husband possibly sought to have his child-support and periodic-alimony obligations established on lesser amounts of income than required for those purposes.

. In his monthly expenditures statement, the husband also sought to establish the amount of his monthly income. We have carefully reviewed that statement and note that the amount of the husband's self-determined monthly income appears to be less than the amount that actually should be considered for alimony purposes. See note 3, supra.
We also note that the husband prepared, and introduced into evidence, a statement relating to certain expenses that he and the wife had spent on the children; that statement reflects that such expenses totaled $1,968.18, of which he paid $1,324.73 and the wife paid $643.45.