This is a divorce case.
After over 18 years of marriage, the husband filed for a divorce, alleging, inter alia, incompatibility. The wife filed an answer and a counterclaim, alleging, inter alia, that the husband had committed marital misconduct. Following ore tenus proceedings, the trial court divorced the parties, and, inter alia, awarded custody of the two minor children to the wife, ordered the husband to pay child support, reserved the issue of post-minority support, ordered the husband to pay the wife periodic alimony for three years or until further ordered, divided the marital properties, and ordered the parties to pay their own attorney fees and costs. The wife's post-judgment motion was denied by operation of law, and she appeals.
The wife raises the following issues: (1) whether the trial court abused its discretion *Page 701 
in the alimony award to the wife; (2) whether the trial court erred in failing to award the wife a portion of the husband's retirement interests; (3) whether the trial court erred in failing to establish a post-minority support obligation for the husband; and (4) whether the trial court abused its discretion in not awarding the wife a reasonable fee for her attorney.
The ore tenus rule affords a presumption of correctness to the trial court's judgment; that presumption is based, in part, on the trial court's unique position to observe the parties and witnesses firsthand, and to adjudge their credibility. Hall v.Mazzone, 486 So.2d 408 (Ala. 1986). The matters raised by the wife concerning periodic alimony and the property division are matters that lie soundly within the discretion of the trial court, and its judgment on those matters will not be disturbed on appeal, except where its discretion was palpably abused.Montgomery v. Montgomery, 519 So.2d 525 (Ala.Civ.App. 1987). In making its determinations, the trial court considers numerous factors. Lones v. Lones, 542 So.2d 1244
(Ala.Civ.App. 1989). The property division is not required to be equal, but it must be equitable. Ross v. Ross, 447 So.2d 812
(Ala.Civ.App. 1984). Additionally, even an award that favors one party over the other is not, in itself, an abuse of discretion.Jordan v. Jordan, 547 So.2d 574 (Ala.Civ.App. 1989). Likewise, the matter of child support is discretionary, and in ruling on that matter, the court must consider the needs of the child and the parent's present ability to meet those needs, without speculation regarding the future. Morrison v. Kirkland,567 So.2d 363 (Ala.Civ.App. 1990). Similarly, the matter of attorney fees is within the trial court's discretion. Sandersv. Gilliland, 628 So.2d 677 (Ala.Civ.App. 1993). Furthermore, even if this court would have determined differently, absent an abuse of discretion, this court is without authority to substitute its judgment for that of the trial court. Beckwithv. Beckwith, 475 So.2d 575 (Ala.Civ.App. 1985).
The extensive record in this case includes transcripts and documents submitted by the parties. The trial court heard two days of testimony from numerous witnesses, including the parties, and had ample evidence to consider regarding the many factors appropriate for its consideration, including, inter alia, the financial conditions of the parties, their conduct, their health and stations in life, and their future prospects.Lutz v. Lutz, 485 So.2d 1174 (Ala.Civ.App. 1986). The wife alleged marital misconduct in her counterclaim for divorce, and the record contains evidence and testimony concerning her allegation. Likewise, the trial court heard the husband's undisputed testimony regarding his accumulation of retirement benefits, and it had ample information regarding such to make its determination regarding its disposition.
The husband was previously married, but while that divorce "was pending," he met the wife when he was in the United States Army, stationed in Seoul, Korea. The wife, a Korean, married the husband in Korea in 1975, and subsequently, she moved with him when he returned to the United States. There were two children born during the marriage, and they are now older teenagers. The husband left the military service after approximately 10 years, and he has been a civil service employee since that time. He has an advanced degree and a consistent employment history. His annual salary at the time of the divorce exceeded $100,000. During the marriage, the husband saved approximately $26,000 in bonds for the purpose of financing their children's college educations.
The wife has a high school education and limited employment experience. Her work experience of approximately nine years during the marriage included working in military commissaries, handling "customer assistance," and handling accounts payable for a drug store. It is undisputed that during the marriage, the husband paid for the wife to attend numerous educational courses, including college courses, in order for the wife to obtain various employment skills, which could improve her business and vocational opportunities, and increase her proficiency in the English language. Although she obtained a community college degree in cosmetology in 1982, she has never worked in that field. Additional college coursework in the fields of computer and business were provided *Page 702 
for her by the husband, and the husband testified that she utilized some of that education. It is undisputed that the wife was employed outside of the home for approximately one-half of the 18-year marriage.
At the time of the hearing, the wife was 44 years old, and, although unemployed, it is undisputed that she had sought employment since the parties had moved to Huntsville. The husband testified that the wife had not yet completed the requirements of obtaining the employment assistance provided for spouses by Redstone Arsenal. The wife testified that she was unable to work because she took medication for anemia, but that otherwise, she had no physical problems. The husband testified that the wife was in good health and had taken prescribed medication for anemia in the mid-1980's. The testimony conflicted whether the wife was taking any medication for anemia at the time of the hearing. It was undisputed that she was working at a drug store during the previous time she was taking medication for anemia, and that she had not been hospitalized or bedridden for anemia.
The husband testified extensively regarding his salary, the family expenses, their holdings, and the various marital properties. He testified that he had set aside an account of $6,000 at Redstone Federal Credit Union for the purpose of the children's educational expenses, but that the wife had withdrawn those funds. He also testified that he purchased savings bonds over a period of years that were to be used for the children's educational expenses. Their maturation value was approximately $26,000, and these were in the wife's possession. He testified extensively regarding numerous accounts held by the parties jointly and separately, including certificates of deposit worth approximately $22,000 held individually by the wife, their separate individual retirement accounts, and the wife's separate savings bonds of approximately $6,000.
It is undisputed that the husband had an extramarital affair with a co-worker in Virginia, but that the parties reconciled and moved to Alabama from Virginia together "to start over" when the husband received a job transfer. The wife argued that the husband's affair continued after moving to Alabama, while the husband asserted that the affair had ended before the move. The wife argued that their telephone bills and a computer communication proved that the affair continued. The husband asserted that the long distance telephone calls were business-related, because he was assisting others in the transition of relocation, and testimony of other witnesses bolstered the husband's assertion. The husband also testified that the date on the computer communication was incorrect.
The parties' children testified regarding the trauma of relocating, some of the family problems, and to events involving the husband's alleged paramour that occurred after the parties separated. The son testified that he wanted to stay in Virginia for his senior year in high school, and that he resented moving. He testified that he did not respect either of his parents, and that he had lost respect for his mother because "she was the one who made the family move." Additionally, he thought that his mother had blackmailed his father by threatening to tell his office about his affair if he did not move the entire family with him. The wife testified regarding a conversation involving the husband that she recorded prior to moving to Alabama. When specifically asked if she tried to blackmail the husband regarding the move to Alabama, she responded "sort of." The wife testified that the husband wanted to leave the family, but that she wanted the family to stay together. The wife's testimony was very clear that she desired to move the entire family to Alabama with the husband, and that she was very excited about the large new house in Alabama that she had chosen.
The record is replete with ample, disputed testimony regarding the wife's allegation of the husband's "marital misconduct," and the husband does not deny that he had had an affair before the parties reconciled and moved to Alabama together. The trial court divorced the parties on the ground of incompatibility, and ample record evidence indicates that the conduct of both parties contributed to the breakdown of the marriage. *Page 703 
There is also record evidence regarding the husband's two daughters by his first marriage. The husband testified that, in part, his decision to allow his first wife's husband to adopt his daughters was because when he married the current wife, she encouraged him to sever all ties from his past. There is record evidence that the wife was unhappy that those children and the husband had re-established contact after the children became adults, and that the wife disapproved of the husband becoming involved in their lives in recent years. The husband testified regarding a specific incident involving his daughter's wedding invitation that, although sent personally to him, had been concealed by the wife. He further testified that, although his parents had maintained contact with his ex-wife, and his daughters, they could not be discussed because "it was a matter of contention for my wife," and further, that his wife had refused to allow him to tell their children about his prior marriage and his other children.
Record evidence, including the wife's own testimony, reveals that the wife showed little interest or involvement in her own children's schools and activities, and that, because she stayed in bed in the mornings, she was not involved in preparing the children's breakfast or in seeing them off to school. The wife testified that since her deposition, the children had volunteered information to her about their schools and their activities because they did not want her to have a bad reputation. She testified that, at her deposition, approximately three months before trial, she did not know specific things about her children, such as their grades or their teachers' names. She further testified that she had not attended PTA meetings, had never volunteered for work in her children's schools, and had never participated in parent-teacher conferences. She further testified that, prior to her deposition, her children tried to ignore whatever she said, but that since they had read her deposition, they were communicating better with her.
The record contains evidence that the husband had been actively involved in the wife's extended family. He voluntarily provided financial support for the college education of the wife's niece, and the wife's mother had lived with the family the last few years of her life. Conversely, the wife had never developed relationships with the husband's family, to the extent of not even knowing his sister's married name. The husband testified that the wife's relationship with his parents was not "overly warm," in part because of his parents' relationship with his children from the previous marriage. He further testified that his parents lived in a rural setting, and that his wife did not often accompany him to visit them because she did not feel comfortable in that setting.
The record is replete with testimony from several witnesses that the wife showed little or no interest in assimilating into the American culture, and that she preferred to associate only with her Korean friends, to speak only the Korean language, and to eat her Korean meals separate from her husband and her children. There was testimony that the wife refused to travel with the husband on vacations, and that if she accompanied him to professional social events, rather than supporting the husband's career in the traditional sense, she chose to segregate with several Korean spouses speaking the Korean language. There is ample record evidence regarding the family's lifestyle and its activities, both as a family and as individuals. It is undisputed that the husband consistently encouraged and requested the wife to work in order for the family to enjoy a certain lifestyle. He supported her educational endeavors toward the goal of her employment. The record is clear that, regardless of the wife's contribution to the family, the husband continued to be a good provider for the family, and that he assumed the greater portion of the nurturing duties as a parent.
One witness, Mrs. Yong Willis, also a Korean wife of a former U.S. serviceman, testified that her relationship with the Treusdells began in Korea many years earlier. She testified regarding her observations of the parties' relationship over the years, the wife's choice not to work in cosmetology, the wife's refusal to participate in social events, regardless of encouragement from others, the husband's loneliness years earlier, and the wife's lack of control over the parties' children. *Page 704 
She testified that the wife had recently told her that she was again taking medication for anemia. Mrs. Willis further testified that, like the wife, she had begun her career by working in the base commissary in Korea, and that she had taken courses to improve her English. She testified that she had worked for the United States government for 15 years, and that she had attained the level of GS-11. She was a budget analyst who was hired to work for the husband because of her "spouse hire preference." She testified that, as a close friend of the family, she had offered to help the wife with the children so that the wife could go on trips with the husband, but that the wife had refused her offer. She testified that, although the wife's only complaint to her about the husband was that he was tight with money, the husband had purchased jewelry and other things for the wife, and Mrs. Willis was unaware of anything the wife wanted and did not have, stating that the wife "has more than anyone I know around us."
The wife first contends that the trial court abused its discretion in its alimony award, both in amount and in its limited duration. Although the wife argues that the husband has superior employment skills and potential, the record clearly discloses her choices not to pursue educational or vocational opportunities, in spite of her husband's constant encouragement and requests throughout the marriage. The record is also replete with evidence regarding other appropriate factors, such as the parties' contributions to the marriage and home life, their health and stations in life, their ages, their future prospects, and their conduct regarding the cause of divorce.Lutz, 485 So.2d 1174. There is no indication that the trial court's determination regarding alimony was intended to penalize the wife for failing to financially contribute to the marriage when her assistance was requested. It appears that the trial court may have been granting the wife a form of rehabilitative alimony to allow her time to adjust and to allow three years for her to pursue a career as her husband had requested her to do throughout their 18-year marriage. Perhaps, also, the time limitation for the alimony was an effort by the trial court to encourage and motivate the wife, who was only 44 years old, to assimilate in the country where she chose to reside and to rear her children. Even so, the alimony award is subject to certain conditions (such as her remarriage), and it is, therefore, subject to future modification, including extension and increase, upon changed circumstances. See Mullinsv. Mullins, 475 So.2d 578 (Ala.Civ.App. 1985). Furthermore, while the record lends itself to much speculation regarding the trial court's alimony determination, it is not the province of an appellate court to reweigh evidence that supports a trial court's judgment and to order a different award, absent any abuse of discretion. Clearly, in this case, the record evidence supports the trial court's alimony determination, and this is particularly true considering the totality of the circumstances and the interrelationship of the property division with the alimony award. Montgomery, 519 So.2d 525. Appellate courts give deference to a trial court's determination regarding alimony when record evidence supports that determination, and the trial court had the unique opportunity to see and hear the parties and witnesses firsthand. The wife has simply shown no error in the trial court's award of periodic alimony.
The wife next contends that the trial court abused its discretion in not awarding her a portion of the husband's retirement benefits. A trial court may consider retirement accounts and benefits in making its determinations regarding alimony and the property division; however, there is no requirement that those assets be divided. Ex parte Vaughn,634 So.2d 533 (Ala. 1993). See also Fowler v. Fowler, 636 So.2d 433
(Ala.Civ.App. 1994), and Landers v. Landers, 631 So.2d 1043
(Ala.Civ.App. 1993). The husband testified regarding specific retirement accounts and benefits he had accumulated before and during this marriage, as well as certain accounts in the wife's name. He testified that his 28 years of government service included 10 years of military service. In its well-reasoned and detailed order, the trial court expressly awarded the husband "his IRAs and other retirement benefits," and it awarded the wife "her separate savings accounts, IRAs and certificates of deposit." *Page 705 
The trial court made its determinations after considering the undisputed testimony regarding the husband's 28-year career with the government, and the existing retirement accounts and other evidence, including financial statements, indicating the husband's contribution to retirement accounts. The wife has failed to disclose error in the trial court's judgment in this regard.
The wife next argues that the trial court erred in failing to establish a post-minority support obligation for the husband. Again, there is no requirement that such an obligation be ordered. It is noteworthy, however, that the trial court "specifically reserve[d] jurisdiction for reconsideration of the proper factors" of post-minority support in the future, although the children would be past the age of minority if and when such reconsideration occurred. See Stein v. Stein,623 So.2d 318, 320 (Ala.Civ.App. 1993). The undisputed evidence in this case is that the husband had already saved over $20,000 for the purpose of the children's college education expenses, and the wife was ordered to hold those funds for the children. No evidence was presented regarding the appropriate factors. See Ex parte Bayliss, 550 So.2d 986 (Ala. 1989), and Thrasher v.Wilburn, 574 So.2d 839 (Ala.Civ.App. 1990). The wife has disclosed no error in this regard.
The wife last argues that the trial court abused its discretion in failing to award her an attorney fee. Absent an abuse of discretion, this court will not reverse a trial court's determination regarding attorney fees in a divorce case. Morrison v. Morrison, 628 So.2d 839 (Ala.Civ.App. 1993). The trial court had substantial evidence regarding the financial circumstances of these parties upon which it could make its determination regarding the payment of attorney fees for the divorce action. We find no abuse of its discretion in its judgment in this regard. Ample evidence in this extensive record supports the trial court's determinations that are challenged in this appeal. Based on the foregoing, the judgment, therefore, is due to be, and it is hereby, affirmed.
AFFIRMED.
MONROE, J., concurs.
ROBERTSON, P.J., concurs specially.
YATES and CRAWLEY, JJ., concur in part and dissent in part.