PER CURIAM.
Susan M. Alfred (“the wife”) and Michael A. Alfred (“the husband”) were married in 1991. They have two children. In July 2009, the parties separated and the husband sued for a divorce. After a trial, the trial court divorced the parties and, among other things, ordered the husband to pay $1,350 per month in child support for the parties’ younger child, 100% of the postminority educational expenses of the parties’ older child, $10,000 in alimony in gross to the wife, and $500 per month in periodic, rehabilitative alimony for 60 months to the wife. The husband was also made responsible for the cost of the wife’s dental work and ordered to provide the wife with COBRA insurance benefits for 36 months. The wife appeals, arguing that the $500 per month alimony award is inequitable and that the trial court erred by failing to reserve jurisdiction to award her permanent periodic alimony after the expiration of the rehabilitative-alimony award.
The husband is a State Farm insurance agent. He also owns Alfred Properties, which leases the property on which his office sits and which owns the building that houses his office and another building that it rents to two business tenants. In the year the parties separated, 2009, the husband reported on his tax returns a total of $395,316 in income from his insurance agency and Alfred Properties. The business expenses of those businesses, as reported on his tax returns, were $202,555. The husband’s adjusted gross income for 2009 was therefore $192,761, before any taxes were paid. His adjusted gross income in 2008 was $218,703, while in 2007 it was $175,648.
Because the husband is self-employed, he must pay estimated income tax on at least a quarterly basis. The husband failed to pay any income tax to the state or the federal governments in 2007, resulting in a tax liability of $130,000, including penalties and interest. He also owed a portion of his 2008 state and federal taxes at the time of trial, which he estimated to be approximately $70,000, including penalties and interest.
The parties had owned a house in Rainbow City that they purchased in 2000 (“the Rainbow City house”). The Rainbow City house had been subject to two mortgages: one with an outstanding balance of $170,000 and one with an outstanding balance of between $60,000 and $65,000. The parties lived in the Rainbow City house until 2008.
In May 2005, the parties purchased a house “on the water” for $445,000 (“the Southside house”). At the time of trial, the Southside house was subject to three mortgages with outstanding balances of $380,000, $60,000 to $65,000, and $40,000, respectively.[1] The parties had paid $5,400 *788 per month in mortgage payments on both houses for approximately 3 years, until they sold the Rainbow City house in 2008. However, they financed the sale of the Rainbow City house, and the purchaser’s monthly payment of $1,437 was less than the $1,800 monthly payment that the parties owed on the outstanding mortgage on the Rainbow City house. See supra note 1. The purchaser of the Rainbow City house defaulted on his payments, the payments on the mortgage on the Rainbow City house increased to $2,375 per month, the payments on the mortgages on the Southside house increased to $4,100, and the parties lacked the funds to pay the combined mortgage payments.
The husband declared bankruptcy in 2008. His tax liability was included in his reorganization plan, but both houses were foreclosed upon by their respective mortgagees. The husband was originally required to pay $4,933 per month under his bankruptcy plan over a 5-year period; his monthly payment was increased to $5,032 in late 2010.
The wife is unemployed. She suffers from sarcoidosis, which is an autoimmune-deficiency disorder that causes the body to attack itself as it would an infection. The disease often attacks muscular organs, causing inflammation that results in scar tissue, thus reducing the elasticity of the organ tissue. The wife’s sarcoidosis affects her lungs and her joints. She takes several medications, including a prescribed steroid and methadone for pain, to treat the symptoms of the disease. She also takes an antidepressant and medication to help her sleep.
Although the husband admitted that the wife’s disease is at least partly disabling, he said that the wife used the disease as a crutch. He said that the wife left much of the care of the children and the arranging of their schedules to him; the husband said that he would take other children to school in the mornings in exchange for other mothers’ picking his children up from school and taking them home or to after-school activities. He said he also did the majority of the shopping for the family-
The husband said that he had decided that he wanted a divorce because he was “tired of being in a marriage by himself.” He said that he already felt like a single parent. He described the wife as selfish, stating that “she would do what she wanted to do when she wanted to do it” and stating that she showed complete disregard of the wishes or needs of her family. The husband denied having engaged in an affair with any woman, although he said that the wife had accused him on more than one occasion of having had an affair. The husband specifically denied the allegation that he had engaged in an affair with a neighbor who was the mother of a close friend of the parties’ younger child around the time of the parties’ separation. He admitted that he did speak to the neighbor on the telephone often, stating that they would discuss them children. He admitted that a note written in his handwriting included the neighbor’s first name; however, he stated that he did not recall writing the note and that he did not know to what the note referred.
The husband testified and provided an exhibit that indicated that in 2010 his average monthly income, after his business expenses were deducted, was $14,514.53. From that amount, the husband paid his monthly bankruptcy-plan payment of $5,032; monthly estimated federal income taxes of $4,100; monthly estimated state income taxes of $450; and $1,350 in child support for one child, $1,000 per month in temporary alimony to the wife, and $1,400 in postminority educational expenses for the parties’ older child, obligations that he *789 had voluntarily assumed while the divorce action was pending. The husband had $1,182.53 left after those expenses were deducted with which to pay for his rent, utilities, groceries, and other expenses. Deducting his $595 in monthly rent from his remaining income leaves the husband $587.58 per month for utilities, groceries, and other expenses. The husband testified at trial that COBRA insurance benefits for the wife would cost $571 per month.
The wife presented both documentary and testimonial evidence of her monthly expenses. She presented an exhibit in which she listed her monthly expenses, including an estimated house payment of $2,000, as being $6,135 per month. Although the wife testified that the power bill was $325, her exhibit lists the amount spent each month on the power bill as $500. She lists on her exhibit a DirecTV bill of $150 per month; the husband, however, stated that the DirecTV bill was around $100 per month. The wife also claimed to spend $1,000 per month for groceries, toiletries, and household products, an amount that she tacitly admitted might be somewhat exorbitant when she testified that the husband had always preferred to do the shopping because he thought that she spent too much money. She also testified that the cellular-telephone bill for her and the two children was $240 per month.
The wife testified that she had significant dental problems that had apparently resulted either from her illness or from the medications that she takes for that illness. She testified at a hearing held in June 2010 that she needed five root-canal procedures. She explained that the cost of the root canals, posts, and crowns, would total over $10,000.[2] As noted above, the husband was ordered to pay for the costs associated with the wife’s dental procedures.
The wife’s father, William E. Murphy, testified about the husband’s business expenses. Murphy is also a State Farm insurance agent. He said that, in his opinion, the business expenses the husband reported on his income-tax returns were inflated. Murphy testified that certain expenses that the husband claimed were not actually business expenses and that the husband had not properly calculated his office rent payments, resulting in a $600 overstatement of his monthly office rent payments. Murphy did not provide an estimate of the husband’s actual income considering the allegedly inflated expenses.
The wife first argues that the trial court erred in failing to award her more than $500 per month in alimony. Generally, an award of alimony is entrusted to the sound discretion of the trial court, and that award will not be set aside absent an abuse of that discretion. O’Neal v. O’Neal, 678 So.2d 161, 164 (Ala.Civ.App.1996). In making the decision to award alimony, the trial court may consider several factors, including the parties’ respective present and future earning capacities, their ages and health, their conduct, the duration of the marriage, and the value and type of marital property. Lutz v. Lutz, 485 So.2d 1174 (Ala.Civ.App.1986). “[T]he purpose of periodic alimony is to support the former dependent spouse and enable that spouse, to the extent possible, to maintain the status that the parties had enjoyed during the marriage, until that spouse is self-supporting or maintaining a *790 lifestyle or status similar to the one enjoyed during the marriage.” O’Neal, 678 So.2d at 164.
The wife insists that the husband earns significant income and should pay considerably more alimony to support her. She places the sole blame for the husband’s tax liability and resulting bankruptcy upon his shoulders, despite the fact that she was his wife at the time he failed to pay taxes and most assuredly reaped the benefit of the additional income the parties enjoyed while failing to pay income taxes. She appears to absolve herself of any liability for the parties’ unsound financial decisions, and she insists that the husband’s substantial bankruptcy payments, should not be considered in determining the appropriate award of alimony to her.
Although the parties enjoyed a high standard of living, it appears clear in hindsight that they overextended themselves by living above their actual means, resulting in financial ruin. The trial court had before it abundant evidence indicating that the husband’s monthly income was nearly exhausted by the payments he was making each month for his bankruptcy, his current income-tax liability, alimony, child support, and the postminority educational expenses of the parties’ older child.[3] The husband was ordered to pay only $500 per month in alimony, which is less than the $1,000 he paid voluntarily pendente lite; however, the husband is also paying $571 per month for COBRA benefits for the wife, which results in his paying more for alimony and health insurance for the wife after the divorce than he was paying during the pendency of the litigation. Because the evidence indicates that the husband is financially unable to pay more than he has been ordered to pay, we affirm the $500 alimony award to the wife.
The wife next argues that the trial court erred in failing to reserve the right to award her periodic alimony in the future after the five-year period expires and her alimony payments cease. The wife is correct that, in the past, “this court has reversed judgments when trial courts have failed to reserve the right to award permanent periodic alimony in light of the length of the parties’ marriage, the disparity between the earning abilities of the parties, the parties’ future prospects, and other factors.” Edwards v. Edwards, 26 So.3d 1254, 1261 (Ala.Civ.App.2009) (citing Giardina v. Giardina, 987 So.2d 606, 620 (Ala.Civ.App.2008)). This court, however, has since overruled Edwards on that point, holding, instead, that an award of limited or rehabilitative alimony is an award of periodic alimony and that a trial court need not reserve the right to award something it has already awarded. Enzor v. Enzor, [Ms. 2100105, December 30, 2011] — So.3d -, - (Ala.Civ.App.2011).
“Upon reevaluation of the essential nature and purpose of rehabilitative alimony, which this court has correctly described as being a mere subclass of periodic alimony that allows a spouse time to begin (or to resume) supporting himself or herself, see Giardina v. Giardina, 987 So.2d 606, 620 (Ala.Civ.App.2008), a majority of this court is now convinced that we should not reverse a judgment when the trial court has failed to reserve the right to award something it has already awarded. When a trial court *791 awards limited or ‘rehabilitative’ alimony, that court has in fact exercised its power to award alimony and may modify that award at any time, on petition of either party, before the award expires. See, e.g., Treusdell v. Treusdell, 671 So.2d 699, 704 (Ala.Civ.App.1995) (three-year award of periodic alimony described as rehabilitative in nature and ‘subject to future modification, including extension and increase, upon changed circumstances’). In this case, the wife’s rehabilitative-alimony award extends into mid-2013, and the wife may seek a modification of her rehabilitative-alimony award at any time before its expiration. Our adoption of this view warrants affirmance of the trial court’s judgment notwithstanding its failure to expressly state that the wife has a right to seek such a modification. Cf Rule 52(a), Ala. R. Civ. P. (noting that the inclusion of factual findings and statements of conclusions of law in a judgment is not mandatory except when required by statute). To the extent that the main opinions in Edwards, Giardi-na, and similar cases hold to the contrary, they are overruled.”
Enzor, — So.3d at -. Because the wife’s rehabilitative-alimony award will not expire until April 2016 and because she may seek a modification of that award or its extension at any time before its expiration, see Treusdell v. Treusdell, 671 So.2d 699, 704 (Ala.Civ.App.1995), the application of the rule announced in Enzor will not prejudice her. We therefore affirm the trial court’s judgment in its entirety.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.
MOORE, J., concurs in part and concurs in the result, with writing.

. The parties had "transferred” one of the mortgages on the Rainbow City house to the Southside house.

. We note that the wife was questioned as to why she needed both root canals, which tend to preserve the tooth, and what her testimony appeared to establish to be dental implants, which replace one's teeth; she did not explain her dental procedures further.

. Although the trial court could have determined that the husband's income might be more than he stated in light of Murphy’s testimony, no other evidence in the record gives a clear picture of what the husband’s actual monthly income should be if Murphy's testimony that certain business expenses were inflated was accepted by the trial court. Accordingly, we will assume that the trial court accepted the husband’s reported income as his true income.