PITTMAN, Judge.
In July 2010, Henry J. Frye (“the former husband”) filed a postdivorce action seeking to reduce his periodic-alimony obligation to Charmann Frye (“the former wife”). Following an ore tenus proceeding, the trial court entered a judgment that stated, in pertinent part:
“Pursuant to the terms of the divorce [judgment], the [former husband] was ordered to pay alimony to the [former wife] in the amount of $1,825.00 per month for a period of sixteen (16) months and thereafter in the amount of $2,200.00 per month for a period of forty-four (44) months. The total obligation of payments in the alimony provision is $126,000.00.
“Since the rendering of the divorce [judgment], there has been a change in circumstances in regard to the economic ability of the [former husband] to continue to pay the said alimony ordered pursuant to said [judgment]. It is the finding of the court that the [former husband] is no longer employed in a way consistent with the income earned during the time that the [former husband] was ordered to pay the previous alimony. The [former husband] has looked diligently and consistently to find work consistent with the prior income. The court is satisfied that the [former husband] is not underemployed but is employed to an extent that he has reasonable income and a reasonable ability to continue to advance his income with the company he is now employed with. It is, therefore, the finding of this court that the total alimony obligation of $126,000.00 shall be paid by the [former husband] herein. It is further the finding of the court that the [former husband] has paid $31,250.00 on said alimony obligation. The court, therefore, finds that the balance owing from the [former husband] to the [former wife] in the amount of alimony is $94,750.00. It is ordered by the court, given the current economic standing of the parties hereto, the amount of monthly alimony to be paid on the outstanding alimony obligation shall be $500.00 per month, commencing thirty (30) days from the entry of this order. Said amount of alimony shall continue to be paid until [the former wife’s] death, remarriage, open cohabitation with a member of the opposite sex or termination of said payments as provided by law, whichever event shall first occur.”
The record before us does not contain the divorce judgment, but it appears that *935 that judgment was entered in July 2009. The evidence indicated that, at the time of the divorce, the former husband had been employed as a structural superintendent for BE & K, Inc., in Birmingham and had been earning an annual income of $95,000 to $100,000. In June 2010, the former husband was laid off from his employment at BE & K. He received unemployment-compensation benefits until November 2010, when he was hired by International Paper Co. to work at its pulpwood operation in Mansfield, Louisiana, where he earned an hourly wage of $14.25. At the time of the modification proceedings, the former husband had remarried and was earning a monthly gross income of $2,300 ($27,600 annually). His wife’s gross annual income was also approximately $27,000, and the couple had monthly expenses totaling $3,129. The former wife’s income had not changed since the time of the divorce. She was still earning an hourly wage of $10, or a gross monthly income of $1,600.
The evidence presented at trial supports the trial court’s finding of a material change in circumstances since the time of the divorce that warranted a reduction of the former husband’s alimony obligation from $2,200 per month to $500 per month. The former wife does not cross-appeal from the trial court’s judgment, and the former husband does not argue that he is financially unable to pay the reduced monthly amount. Instead, he argues that the trial court erred in failing to reduce his “total alimony obligation,” i.e., $94,750— the unpaid balance of $126,000, the sum of all alimony payments contemplated by the divorce judgment.
The former husband contends that, because periodic alimony is based upon an obligor’s current ability to pay, he is not obligated to pay the balance due on the original sum of $126,000 because, he says, that sum had been calculated in accordance with his ability to pay at the time of the divorce. The former husband, however, does not argue the logical corollary of that contention: that he should be required to pay reduced payments of $500 per month only for the time remaining in the 60-month payment period set in the divorce judgment. Both parties evidently understand the trial court’s modification judgment to mean that the former husband’s alimony obligation, as modified, will end when the balance of $94,750 is paid.[1] That understanding is, presumably, based on the following portion of the judgment, which we designate “Provision A”:
“It is, therefore, the finding of this court that the total alimony obligation of $126,000.00 shall be paid by the [former husband] herein. It is further the finding of the court that the [former husband] has paid $31,250.00 on said alimony obligation. The court, therefore, finds that the balance owing from the [former husband] to the [former wife] in the amount of alimony is $91,750.00. It is ordered by the court, given the current economic standing of the parties hereto, the amount of monthly alimony to be paid on the outstanding alimony obligation shall be $500.00 per month, commencing thirty (30) days from the entry of this order.”
(Emphasis added.) In order to conclude that the former husband’s alimony obli *936 gation will end when the $94,750 balance is paid, one would have to ignore the remainder of the trial court’s judgment, however, specifically that portion of the judgment that we designate “Provision B”:
“Said amount of alimony [$500 per month] shall continue to be paid until [the former wife’s] death, remarriage, open cohabitation with a member of the opposite sex or termination of said payments as provided by law, whichever event shall first occur.”
The parties apparently interpret Provision A as an award to the former wife of the specific sum of $94,750, representing the unpaid balance of the sum of all alimony payments due under the divorce judgment, but payable in increments of $500 per month. To pay off the outstanding balance of $94,750, the former husband would have to make 189 monthly payments of $500, plus 1 payment of $250. Thus, under the parties’ reading of Provision A, the trial court extended the 60-month period during which the former husband was originally to pay alimony so that he would continue to pay alimony for 15 years, 10 months.
Provision B, on the other hand, indicates that the former husband is to pay periodic alimony for the indefinite future, subject only to the familiar, legally recognized reasons for terminating payments of periodic alimony. Irrespective of whatever else may be said of Provisions A and B, it is evident that the trial court’s modification judgment extended the time for paying periodic alimony beyond the term established in the divorce judgment. At trial, the former wife acknowledged that she was asking the court to order payment of $94,750 and to have the payments “stretched out” over time to ensure that she would receive the “full amount.” The former husband does not argue that the trial court had no authority to extend the period for payment of alimony, and it is generally recognized that, “where a termination date is provided for the periodic alimony, the court can modify the award of periodic alimony only before the date of termination.” Tibbetts v. Tibbetts, 762 So.2d 856, 858 (Ala.Civ.App.1999) (citing Banks v. Banks, 336 So.2d 1365, 1367 (Ala.Civ.App.1976)). See generally Russell G. Donaldson, Annot., Power to Modify Spousal Support Award for a Limited Term, Issued in Conjunction with Divorce, So as to Extend the Term or Make the Award Permanent, 62 A.L.R.4th 180 (1988). In the present case, the modification occurred before the end of the 60-month period specified in the divorce judgment.
To the extent that there is a conflict between Provision A and Provision B, we are governed by the following principles in construing the modification judgment:
“[D]ivorce judgments should ‘be interpreted or construed like other written instruments.’ Sartin v. Sartin, 678 So.2d 1181, 1183 (Ala.Civ.App.1996); see also Springer v. Damrich, 993 So.2d 481, 488 (Ala.Civ.App.2008).
“ ‘ “Separate provisions of judgments, like provisions of contracts, should be construed in pari materia, and the entire judgment — all provisions considered — should be read as a whole in the light of all the circumstances, as well as of the conduct of the parties .... Further, if the terms of a judgment are not ambiguous, they should be given their usual and ordinary meaning.” ’
“Ex parte Snider, 929 So.2d 447, 456-57 (Ala.2005) (quoting Moore v. Graham, 590 So.2d 293, 295 (Ala.Civ.App.1991)); see also Wall v. Borosky, 850 So.2d 351, 354 (Ala.Civ.App.2002).
*937 “When interpreting possibly conflicting provisions in a judgment, specific terms are given more weight than are more general provisions. See Ex parte Dan Tucker Auto Sales, Inc., 718 So.2d 33, 36 (Ala.1998). Moreover,
“ ‘ “where there is a choice between a valid construction and an invalid construction the court has a duty to accept the construction that will uphold, rather than destroy, the [instrument].” Homes of Legend, Inc. v. McCollough, 776 So.2d 741, 746 (Ala.2000). See also Clark v. Board of Dental Exam’rs of Georgia, 240 Ga. 289, 294, 240 S.E.2d 250, 254 (1977) (“ “When a judgment is susceptible of two meanings, one of which would render it illegal and the other proper, that construction will, if reasonably possible, be given it that would render it legal.’ ” (quoting Byrd v. Goodman, 195 Ga. 621, 25 S.E.2d 34 (1943))).’
“[Ex parte ] Snider, 929 So.2d [447,] 457 [(Ala.2005)].”
Cockrell v. Cockrell, 40 So.3d 712, 715 (Ala.Civ.App.2009).
In the present case, there is “ ‘ “a choice between a valid construction and an invalid construction” ’ ” of the modification judgment, id., because accepting the “ ‘ “usual and ordinary meaning,” ’ ” id., of the language in Provision A would be consistent with the divorce court’s having awarded the former wife alimony in gross — an award that is certain as to time and amount of payment, that is vested, and that is, therefore, nonmodifiable, see Ex parte Hager, 293 Ala. 47, 55, 299 So.2d 743, 750 (1974)—and inconsistent with the divorce court’s having awarded the wife periodic alimony. We acknowledge that the trial court’s statement of the substance of the alimony award could, conceivably, be deemed to describe an award of alimony in gross. However, the divorce judgment is not before us and both parties agree that the award was one of periodic alimony. Moreover, the record contains no indication that the award was intended to be in settlement of the former wife’s inchoate marital rights and every indication that it was intended to be for the future support of the former wife payable from the current earnings of the former husband. See Huldtquist v. Huldtquist, 465 So.2d 1146, 1148 (Ala.Civ.App.1984) (construing a judgment ordering payments of $350 per month for 12 months, and then $300 a month for 8 years, to be periodic alimony, despite the fact that the time of payment and amount of payment were certain, because “the purpose of the payments was not to replace the wife’s inchoate rights in the husband’s estate (alimony in gross), but rather to pay a future allowance for support of the wife out of the husband’s future earnings”). Accordingly, we conclude that the award was either “rehabilitative alimony,” see Alfred v. Alfred, 89 So.3d 786 (Ala.Civ.App.2012), or “periodic alimony limited to a period of 60 months,” id., 89 So.3d at 791 (Moore, J., concurring in part and concurring in the result).
An initial award of periodic alimony and any modification thereof must be based on the obligor’s then current earnings.
“Periodic alimony ... ‘is an allowance for the future support of the [recipient spouse] payable from the current earnings of the [paying spouse].’ [Hager v.] Hager, 293 Ala. [47] at 55, 299 So.2d [743] at 750 [(1974)]. Its purpose ‘is to support the former dependent spouse and enable that spouse, to the extent possible, to maintain the status that the parties had enjoyed during the marriage, until that spouse is self-supporting or maintaining a lifestyle or status similar to the one enjoyed during the marriage.’ O’Neal v. O’Neal, 678 So.2d 161, *938 164 (Ala.Civ.App.1996) (emphasis added). Periodic alimony is modifiable based upon changes in the parties’ financial conditions or needs, such as an increase in the need of the recipient spouse, a decrease in the income of the paying spouse, or an increase in the income of the recipient spouse. See Tibbetts v. Tibbetts, 762 So.2d 856, 858 (Ala.Civ.App.1999).”
TenEyck v. TenEyck, 885 So.2d 146, 152 (Ala.Civ.App.2003)
If Provision A were construed to require that the former husband pay the reduced monthly amount of periodic alimony only until he had paid the outstanding balance on the original amount due under the provisions of the divorce judgment, then that provision would constitute reversible error. That is so because the sum of all payments required by the alimony award in the divorce judgment (a) was based upon the former husband’s earnings at the time of the divorce, not upon his earnings at the time of the modification proceeding, and (b) was not a vested right of the former wife but was modifiable based on the very change in circumstances that, the trial court determined, had occurred in this case.
On the other hand, accepting Provision B as controlling and regarding Provision A as containing superfluous factual findings would result in upholding the judgment modifying the former husband’s periodic-alimony obligation. “[Wjhere there is a choice between a valid construction and an invalid construction the court has a duty to accept the construction that will uphold, rather than destroy [the judgment].” Homes of Legend, Inc. v. McCollough, 776 So.2d 741, 746 (Ala.2000) (quoted in Cock-rell, supra). We, therefore, hold that the language in Provision A — that “the total alimony obligation of $126,000.00 shall be paid by the [former husband]” and that “the balance owing from the [former husband] to the [former wife] in the amount of alimony is $94,750.00” (each of which the trial court designated a “finding”) — constitutes just that: findings of fact. The conclusion of law (and the operative portion) of the modification judgment, however, is contained in Provision B:
“Said amount of alimony [$500 per month] shall continue to be paid until [the former wife’s] death, remarriage, open cohabitation with a member of the opposite sex or termination of said payments as provided by law, whichever event shall first occur.”
Based on the foregoing, we conclude that the trial court’s judgment, interpreted as described in this opinion, is due to be affirmed.
The former wife’s request for an attorney’s fee on appeal is denied.
AFFIRMED.
THOMPSON, P.J., and THOMAS, J., concur.
BRYAN and MOORE, JJ., concur in the result, without writings.

. In her appellate brief, the former wife argues that "[i]t is abundantly clear ... that [the former husband] just wants out of the obligation [to pay $94,750] altogether, and the [trial] court found no justification for that.”