Rel: February 14, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2024-2025

_____

### CL-2024-0258

_____

### Stacey Lynn Kitchens

### v.

### William Bradford Kitchens

### Appeal from Montgomery Circuit Court
### (DR-09-260.06)

PER CURIAM.

Stacey Lynn Kitchens ("the former wife") appeals from a judgment entered by the Montgomery Circuit Court ("the trial court") in favor of William Bradford Kitchens ("the former husband"). This court dismissed a previous appeal by the former wife because that appeal had been taken

from a nonfinal judgment. See Kitchens v. Kitchens, 388 So. 3d 694 (Ala. Civ. App. 2023).

The parties were divorced by a judgment entered by the trial court in February 2010 ("the divorce judgment"). Pursuant to the divorce judgment, the former husband was required to pay the former wife periodic alimony in the amount of $3,050 per month. In a modification action commenced by the former husband, the trial court entered a judgment on November 16, 2018 ("the November 2018 judgment"), reducing the former husband's periodic-alimony obligation to $2,440 per month beginning in December 2018, addressing certain arrearages that were owed by the former husband, and awarding the former wife $20,586.84 as attorney fees. The attorney-fee award was to be paid in 24 installments of $857.79 per month beginning in January 2019.

It is undisputed that the former husband failed to make any payment toward the attorney-fee award. In November 2019, the former wife filed in the trial court a contempt petition based on the former husband's noncompliance with the November 2018 judgment. The former wife's contempt action was assigned case number DR-09-260.06.

2

In December 2019, the former husband filed an answer to the former wife's contempt petition. He alleged that he had lost his job and had been unemployed for over a year. In August 2021, the former husband filed what he titled as an "Amended Motion to Modify Divorce Decree," in which he requested a termination of his periodic-alimony obligation based on alleged changes in his financial circumstances after the entry of the November 2018 judgment. He also alleged that he was being treated for depression and that the former wife was capable of working full time instead of part time.

Beginning in September 2021, the former husband reduced his monthly periodic-alimony payments to the former wife. On December 2, 2021, the former wife filed an amendment to her contempt petition regarding the payment of those reduced amounts. She requested that the former husband be held in contempt for his failure to pay the full amount of his monthly periodic-alimony obligation and for his failure to pay his attorney-fee obligation under the November 2018 judgment. Thereafter, the former husband filed an answer to the former wife's amended contempt petition; he also filed a motion requesting that the former wife's contempt petition be dismissed because, he alleged, she had

failed to respond to his discovery requests regarding her income and financial condition.

On December 13, 2021, the trial court received ore tenus evidence during a trial conducted via Zoom, a videoconferencing service.[1] As discussed infra, however, because of technical difficulties, the former husband and his attorney appeared at the trial by telephone. After the trial, the parties submitted posttrial memoranda, and the former wife also submitted a document purporting to describe and list the various amounts that she claimed she was owed by the former husband.

On July 7, 2022, the trial court entered an order purporting to dispose of the case. See Kitchens, supra. As noted above, the divorce judgment, which had been based on the parties' settlement agreement, required the former husband to pay the former wife periodic alimony in the amount of $3,050 per month. The July 2022 order described the history of the litigation between the parties after the entry of the divorce judgment as follows:

---

[1]Our supreme court authorized trials to be conducted through the use of audiovisual technology during the COVID-19 pandemic. Administrative Order No. 16 was the last order authorizing that practice. That order, which was issued on March 23, 2022, extended the authorization to use such technology until September 30, 2022.

"On or about August 27, 2014, the former [h]usband filed his Petition to Modify against the former [w]ife, wherein he requested that the court reduce the amount of alimony from $3,050.00 to $1,000.00, as his income at the time of the Parties' Settlement Agreement was approximately $700,000.00 and was then $182,000.00 at the time of filing the modification petition due to his company being sold. However, the former [h]usband voluntarily withdrew his Petition to Modify that was [g]ranted by the court on September 5, 2014.

"The former [h]usband filed his second Petition for Modification of the Divorce Decree on July 13, 2016. The former [h]usband alleged that there was a substantial change in circumstances of the Parties since the divorce of the Parties. Specifically, he noted the decrease in income, as a result of losing his job and ownership in the insurance company that he was employed [by] at the time of divorce; payment of child support in the amount of $900.00 for each of his three children; payment of college tuition for the oldest child of the Parties and foreclosure of his home; and a $125,000.00 loan secured by the former [h]usband.

"[In the November 2018 judgment], the [trial court] modified the alimony award from $3,050.00 to $2,440.00 monthly in accordance with the recommendation of Special Master Cynthia Underwood effective December 1, 2018. The court awarded the former [w]ife past due alimony in the amount of $46,614.00, plus interest. Separate and apart from the award of past due alimony in the amount of $46,614.00, the court also awarded the former [w]ife $4,403.33 for the period March of 2018 through September 2018. Lastly, the court awarded attorney fees to the former [w]ife in the amount of $20,586.84. Following the [entry of the November 2018 judgment], counsel for the former [h]usband filed a Motion to Reconsider Attorney Fees that was denied by operation of law.

5

"Thereafter, on or about November 18, 2019, the former [w]ife filed her Petition for Contempt, based on her allegation that the former [h]usband failed to pay certain attorney's fees to the former [w]ife arising out of the [November 2018 judgment]. Additionally, the former [w]ife requested attorney's fees and costs associated with the current action. … The former [h]usband admitted that the attorney's fees were not paid. Additionally, he testified that at or about the time of hearing, he was only making partial payments toward the monthly alimony obligation. The former [h]usband testified that he was unable to pay the monthly alimony award as he lost his job and had residual commission payments of approximately $39,000.00 per year; foreclosure of his home for nonpayment; loan to pay alimony [arrearage] ordered on November 16, 2018; payment of all child support and college education for the children of the Parties; treatment of depression diagnosis by psychiatrist; alimony payments."

The July 2022 order concluded that the former husband had proven a material change in circumstances, specifically in his ability to pay, and terminated his monthly periodic-alimony obligation to the former wife. In addition, the July 2022 order required that the former husband pay the former wife the $20,586.84 in attorney fees awarded in the November 2018 judgment, "plus interest." The July 2022 order, however, did not calculate the interest due on the past-due attorney fees. The trial court also denied all other requested relief.

The former wife filed a purported postjudgment motion and, thereafter, a notice of appeal. Upon our receipt of the former wife's notice

6

of appeal, this court entered an order holding the former wife's notice of appeal in abeyance pending a ruling on the former wife's purported postjudgment motion. We then entered an order informing the parties that the former wife's appeal would proceed. Upon review of the record, this court determined that the July 2022 order was not a final judgment based on the lack of any determination of the amount of interest owed by the former husband on the 2018 attorney-fee award, and we dismissed the former wife's appeal. See Kitchens, 388 So. 2d at 697-98.

This court issued a certificate of judgment in Kitchens on August 23, 2023, after which the former wife filed in the trial court a motion for a status conference. The trial court entered an order granting that motion and setting the case for a status conference to be held on March 8, 2024. The day before the status conference, the parties filed a joint stipulation that stated, among other things, that the former husband had made no payments toward the November 2018 attorney-fee award of $20,586.84 and that he owed the former wife that amount, plus $7,463.36 in interest, or a total of $28,050.32 as of February 2024.[2]

---

[2]We are aware that the sum of $20,586.84 and $7,463.36 is $28,050.20. However, the former husband has not complained of the mathematical error in the parties' joint stipulation, which was, as noted,

7

On March 8, 2024, the trial court entered an order "in consideration of the joint stipulation" and this court's opinion in <u>Kitchens</u>, noting that the parties had requested to be excused from appearing at that time. The March 2024 order stated that the former husband's unpaid attorney-fee obligation was $20,586.84, plus $7,463.36 in interest, or a total of $28,050.32. The July 2022 order, combined with the March 2024 order, constitute a final judgment, and we refer to those orders collectively as "the final judgment." On April 10, 2024, the former wife filed a notice of appeal to this court.

The former wife argues that the trial court did not have jurisdiction to modify and terminate the former husband's periodic-alimony obligation because, she says, he did not file a modification petition or pay a filing fee. It is undisputed that the former husband had filed an answer (titled "Response to Petition for Contempt") to the former wife's contempt petition in which he alleged that he had "lost his job and … [had] been unemployed for over a year" and that he thereafter filed a document titled "Amended Motion to Modify Divorce Decree" that included allegations

_____

<u>infra</u>, adopted in the trial court's final judgment entered on March 8, 2024.

8

that a material change in his financial situation had occurred after the entry of the November 2018 judgment and that requested the entry of a judgment terminating his periodic-alimony obligation. At the trial, the trial court clearly treated the former husband's motion as a counterclaim because it considered and adjudicated the issue of the modification of the former husband's periodic-alimony obligation in the final judgment and repeatedly overruled the former wife's objections to the presentation of evidence regarding the issue of alimony.

"[A] party's pleadings and motions should be treated according to their substance rather than their titles," Patterson v. Patterson, 71 So. 3d 699, 700 (Ala. Civ. App. 2011), and the former wife has made no argument that the trial court erred by allowing the former husband to amend his pleadings to include a counterclaim for the modification of his periodic-alimony obligation. See Rule 13(f), Ala. R. Civ. P. Instead, she argues that the trial court lacked jurisdiction to adjudicate the former husband's counterclaim based on her contention that he failed to pay a filing fee. The former wife cites Farmer v. Farmer, 842 So. 2d 679 (Ala. Civ. App. 2002), in support of her argument that the former husband's

claim for modification did not invoke the jurisdiction of the trial court because the former husband failed to pay a filing fee.

However, <u>Farmer</u> is distinguishable procedurally from the present case. In <u>Farmer</u>, a father and paternal grandparents-intervenors attempted to initiate a custody-modification action by handing a modification petition to the trial judge and to opposing counsel at a hearing on the father's untimely postjudgment motion directed to the original custody judgment. 842 So. 2d at 680. We concluded that the father and paternal grandparents-intervenors had not properly instituted the modification action because they had not filed the pleading with the trial-court clerk, had not paid the required filing fee to initiate a civil action, and had not properly served the mother. <u>Id.</u> at 861.

Unlike in <u>Farmer</u>, in which the petitioner attempted to institute a modification action by merely handing the modification petition to the trial judge and opposing counsel, in the present case, the former husband filed what is, in essence, a counterclaim to the former wife's properly initiated contempt action. Pursuant to established precedent, the payment of a filing fee associated with a counterclaim is not a "jurisdictional prerequisite" to the consideration and adjudication of a

10

counterclaim when the commencement of the action included payment of the proper filing fee in conjunction with the filing of the initial pleading. See, e.g., Wood v. Gibson, 366 So. 3d 969, 972-73 (Ala. Civ. App. 2022) ("[A]lthough the trial court should have assured that the father paid the filing fee, the trial court did not lack jurisdiction over the counterclaim because the fee had not been collected."); Landry v. Landry, 182 So. 3d 553, 556 (Ala. Civ. App. 2014) ("The trial court should have assured that the mother paid the filing fee, but the trial court did not lack subject-matter jurisdiction over the counterclaim solely because that fee had not been collected.").[3]  Accordingly, we reject the former wife's filing-fee argument and conclude that the trial court had jurisdiction to consider the former husband's request that his periodic-alimony obligation be modified or terminated.

---

[3]The former wife cites only distinguishable precedents in support of her argument.  Her reliance on Vann v. Cook, 989 So. 2d 556, 559 (Ala. Civ. App. 2008), is misplaced because that case involved the failure of either party to pay the filing fee for initiating an action, which would create a jurisdictional defect.  Likewise, her reliance in her reply brief on Ex parte Bragg, 237 So. 3d 235, 238 (Ala. Civ. App. 2017), and Odom v. Odom, 89 So. 3d 121, 123 (Ala. Civ. App. 2011), which involved the failure to pay the filing fee associated with the initial pleading in those respective cases, is misplaced.

The former wife next argues that the trial court erred by allowing the former husband to appear by telephone at the December 2021 virtual trial. According to her, she was unable to confront and properly examine the former husband and the trial court was unable to observe his demeanor. In the July 2022 order, the trial court stated that

> "[t]he Parties appeared for a Virtual Hearing on December 13, 2021. The court observed the [former w]ife and her demeanor as sworn testimony was presented. [Neither] [t]he former [h]usband nor his attorney appeared by video due to technical difficulties. The former [w]ife and her attorney represented to the court that they each recognized the voices of the former [h]usband and his attorney."

The former wife notes that no order was entered permitting the former husband's appearance by telephone but that is not relevant to our decision on this issue. The former wife never objected to the trial court's decision to allow the former husband and his counsel to appear by telephone until she filed her motion to reconsider directed to the July 2022 order, and she has cited no authority supporting the conclusion that the trial court was required to overlook her decision to proceed, without objection, at the December 2021 trial, or that the trial court was required to sustain an objection that was raised for the first time in a motion to reconsider after the trial court had ruled against her. See Ex parte

Wilson, 450 So. 2d 104, 106 (Ala. 1984) ("Mr. Wilson undoubtedly waived his due process rights of confrontation and cross-examination by consenting to the in camera interview."); see also Davis v. Davis, 474 So. 2d 654, 656 (Ala. 1985) ("Each of the matters raised under Appellant's third allegation of error (i.e., failure of notice as to certain documents and pleadings) was raised for the first time by way of post-judgment motion. The law does not permit a litigant with knowledge of previously unserved pleadings and documents to go to trial, gamble on a favorable outcome at the hands of the jury, and then, if he loses, raise this deficiency for the first time on a post-trial motion for a new trial."); D.B. v. M.A., 975 So. 2d 927, 937-38 (Ala. Civ. App. 2006) (determining that an adoptive couple who appeared in and participated in the juvenile-court proceedings and who had not raised the issue of insufficiency of proper service of process until their postjudgment motion had waived their right to proper service of process and could not raise the argument on appeal). Based on the foregoing, we reject the former wife's argument regarding the trial court's allowing the former husband to testify by telephone at trial.

We turn now to the former wife's argument that the final judgment should be reversed because the trial court did not make "express findings

as to the elements of [Ala. Code 1975,] § 30-2-57[,] to support the modification."  The former wife cites Merrick v. Merrick, 352 So. 3d 770 (Ala. Civ. App. 2021), which involved an alimony award in an initial divorce proceeding and did not address the issue whether § 30-2-57 requires express findings for purposes of terminating an existing alimony obligation.  More importantly, the express-findings requirement applies to an alimony award "[u]pon granting a divorce or legal separation" for purposes of establishing that certain matters were considered by the trial court in awarding alimony.  § 30-2-57(a).  Modification of an existing alimony obligation is addressed in § 30-2-57(h), which states that "[a]n order awarding rehabilitative or periodic alimony may be modified based upon application and a showing of material change in circumstances."  Section 30-2-57 imposes no express findings requirement in a modification proceeding when an alimony obligation is terminated.  Thus, we reject the former wife's argument regarding the application of the express findings requirement of § 30-2-57(a), although we acknowledge that various specific factors listed in that Code section mirror some of those listed in our precedents discussing the matters a trial court should consider when addressing a modification of alimony.

14

See Higgs v. Higgs, 270 So. 3d 280, 285 (Ala. Civ. App. 2018) (discussing the factors a trial court should consider in an alimony-modification case); Santiago v. Santiago, 122 So. 3d 1270, 1278 (Ala. Civ. App. 2013) (same).

The former wife next argues that the trial court erred by terminating the former husband's periodic-alimony obligation because, she says, there was insufficient evidence to support a finding that a material change of circumstances had occurred that would support such a termination.

> "[T]he modification of alimony is a matter that rests within the sound discretion of the trial court[,] and … the trial court's judgment on that matter, following the presentation of ore tenus evidence, is presumed correct. … '"Furthermore, this court is not permitted to reweigh the evidence on appeal or to substitute its judgment for that of the trial court."' Schiesz [v. Schiesz], 941 So. 2d [279,] 289 [(Ala. Civ. App. 2006)] (quoting Sellers v. Sellers, 893 So. 2d 456, 461 (Ala. Civ. App. 2004)). 'Consequently, this court must determine if there was sufficient evidence to support the trial court's judgment. If so, we must affirm.' Hill [v. Hill], 562 So. 2d [255,] 257 [(Ala. Civ. App. 1990)]. However, if the trial court's judgment is unsupported by the evidence so as to be plainly and palpably wrong, we will reverse. …
>
> "At trial, the party seeking to modify a trial court's judgment regarding alimony must make a showing that, since the trial court's previous judgment, there has been a 'material change in the circumstances of the parties.' Posey [v. Posey], 634 So. 2d [571,] 572 [(Ala. Civ. App. 1994)] (citing Garthright v. Garthright, 456 So. 2d 825 (Ala. Civ. App. 1984))."

Newsome v. Newsome, 984 So. 2d 463, 465-66 (Ala. Civ. App. 2007) (emphasis added); see also Ex parte Ederer, 900 So. 2d 424, 426 (Ala. 2004) (citation omitted) (stating that "'"an obligation to pay alimony may be modified only upon a showing of a material change in circumstances that has occurred since the trial court's previous judgment, and the burden is on the party seeking a modification to make this showing"'"). "An obligation to pay alimony may be modified based upon a material change in circumstances in the financial needs of the payee spouse and/or in the financial ability of the payor spouse to respond to those needs." Ex parte Wilson, 262 So. 3d 1202, 1204 (Ala. 2018). Moreover, "the law is concerned with one's ability to earn, as opposed to actual earnings, in determining whether periodic alimony should be terminated, increased, or reduced." Cox v. Cox, 485 So. 2d 767, 768 (Ala. Civ. App. 1986); see also Higgs, 270 So. 3d 280 at 285, and Santiago, 122 So. 3d at 1278.

In the final judgment, the trial court made specific findings in support of the termination of the former husband's periodic-alimony obligation. Specifically, the trial court stated that it had relied on the former husband's testimony that

"he was unable to pay the monthly alimony award as he lost his job and had residual commission payments of $39,000 per

16

year; foreclosure of his home for non-payment; loan to pay alimony ordered on November 16, 2018; payment of all child support and college education for the children of the parties; treatment of depression diagnosis by psychiatrist; alimony payments."

The record does not contain testimony supporting most of the trial court's findings.

Although the record contains averments and findings in the November 2018 judgment that indicated that the former husband had suffered the loss of some former employment, no testimony or evidence was presented indicating that the former husband had "lost his job" after the entry of the November 2018 judgment. In fact, according to the final judgment, the former husband's job loss had been a basis for the November 2018 reduction in his periodic-alimony payments. The former husband did not testify about any residual commission payments at the December 2021 trial. Instead, at the December 2021 trial, the former husband testified that he was then employed in a family business earning approximately $2,400 per month and was also employed part-time doing construction at which he earned "a couple hundred dollars extra a week." He explained that he was employed as

"an assistant with an agency that is owned by [his] father and [the former husband's] family that I receive about the same

17

amount that I owe in alimony, which is $2,400. And I work part-time on a construction crew now trying to make ends meet, and that's a part-time job I don't work that a full day. So I'm trying to work, but, you know, I'm kind of powerless."

The former husband opined that he did "not have the ability [himself] to pay the alimony" required by the November 2018 judgment. He further stated that, beginning in September 2021, he had not been paying the former wife $2,440 per month as periodic alimony but, instead, had "been paying her about $1,500 a month, but I really don't have it." He later clarified he had paid the former wife about $1,400 or $1,500 every month. The former husband did not testify about his specific monthly living expenses but admitted that "at one time" his monthly expenses had been $12,000 to $14,000. He stated that his expenses were "not near that anymore."

During his testimony, the former husband referenced a trust that he and his brother "owned" but that was "controlled by their father," but no trust document was admitted into evidence at trial. The former husband stated:

"I don't know how to explain this other than I'm paying [the former wife] out of a trust. Yes, there is money coming to [the former wife]. And my bills are high, but I don't personally have the money to pay. If I make $2,400 with the agency that I'm employed at and I make a couple hundred dollars extra a

18

week, how am I supposed to pay [$]2,440 other than going to my dad saying, please pay my alimony for [the former] wife. I can't keep doing that."

The former husband did not explain why he could not continue to ask for funds from the trust that he "owned." The former husband said that his family's money from "the various corporations" that the family owned had been embezzled and also testified that "his inheritance" that had been set up by his father in the trust had also been confiscated and embezzled. The former husband testified that his father was "doing everything he [could] to stay afloat" and denied that his father could assist him financially at the time of trial.

In addition, the former husband did not testify about any foreclosure having taken place concerning his residence. Instead, he testified that his residence was valued at $470,000, was subject to a mortgage of approximately $320,000, and could not be refinanced because, the former husband said, his credit had been "destroyed." Although the former husband testified about the sizeable mortgage on his residence, he did not testify about how the mortgage payments or his other living expenses were being paid other than this statement, which

is quoted above: "And my bills are high, but I don't personally have the money to pay."

The former husband also did not testify at the December 2021 trial about paying college expenses for the parties' children. We note that, because the former husband admitted that he had not been required to pay the children's college expenses, such payments would have been a gratuitous undertaking and not a proper basis for reducing or terminating his periodic-alimony obligation. See Myrick v. Myrick, 370 So. 3d 246, 254 (Ala. Civ. App. 2022); Sosebee v. Sosebee, 896 So. 2d 557, 562 (Ala. Civ. App. 2004). Moreover, the former husband did not testify at the December 2021 trial about being treated for depression or how that might have impacted his income or his ability to earn.[4]

_____

[4]Notably, such evidence must have been presented at the proceedings leading to the November 2018 judgment, because, in the November 2018 judgment, the trial court, in declining to hold the former husband in contempt for failing to pay alimony at that time, stated: "Further, the Court notes that the former Husband testified that his income decreased when he was terminated after being hospitalized for depression and that he also continued to support the children of the marriage while they were enrolled in college and thereafter." The record contains a letter dated August 23, 2019, from a psychiatrist stating that the former husband was hospitalized for treatment of "bipolar and anxiety"; that letter was appended to a motion for a continuance filed in October 2022. The only mention of the facts relating to paying for the college education of his children in the current contempt and modification

20

The former wife testified that, at the time of the previous modification proceeding, she had been "working for Snap Diagnostics and working as much as [she] could." The former husband did not establish what her earnings were at that time. The former wife subsequently left her employment at Snap Diagnostics and was employed cleaning beach-vacation rental properties at the time of trial. She stated that her earnings were "very random" and that she worked "as much as [she could]." The former wife stated that she did not have a salary, that she was "paid when [she] clean[ed] something," and that her work was seasonal. She stated that she had earned $1,180 for the month of November through December 13, 2021, the date of trial.

When the former husband's counsel asked the former wife why she had not produced any of her IRS Form W-2 Wage and Tax Statements,

---

action occur in averments contained in the unverified pleadings or motions filed by the former husband, which clearly are not evidence, and statements in a question posed to the former wife by the former husband's counsel, which also is not evidence. Ex parte Gentile Co., LLC, 221 So. 3d 1066, 1069 (Ala. Civ. App. 2016) ("'The unsworn statements, factual assertions, and arguments of counsel are not evidence.' Ex parte Russell, 911 So. 2d 719, 725 (Ala. Civ. App. 2005). Similarly, the statements made by counsel in an unsworn pleading or motion are also not evidence. Hicks v. Jackson Cty. Comm'n, 990 So. 2d 904, 905 n.1 Ala. Civ. App. 2008).").

she stated: "I didn't find that that -- what I made was relevant." When asked again why she had not produced her "IRS W-2, state income tax withholdings," the former wife stated that the "case was supposed to be about attorney fees" and the former husband's alleged contempt and that she did not "think whatever [she was] making right now, which [was] not much at all, [was] relevant to" the former husband's attorney-fee obligation. The trial court instructed the former wife that relevancy was an issue for the court to decide; the trial court also stated that it was "limited in terms of what options it [had]" based on the former wife's failure to provide information to the former husband.

As noted above, however, the former husband requested that the former wife's claims be dismissed based on her failure to produce financial documents; the trial court did not grant that motion. There was also a discussion at trial about when those documents had been requested and the former wife's counsel's objection to that request. The former wife's counsel stated that she would produce the documents if ordered to do so, but the trial court indicated that it wanted to "make a final decision and be done with [the case]."

22

A trial court may terminate alimony temporarily or permanently as a sanction pursuant to Rule 37, Ala. R. Civ. P, <u>see</u> <u>Tucker v. Tucker</u>, 416 So. 2d 1053, 1058 (Ala. Civ. App. 1982), but there is no indication in the final judgment that the trial court intended to sanction the former wife in this case or that it had entered an order requiring her to comply with the former husband's discovery requests regarding her financial documents. Instead, the factual determinations in the final judgment discuss the former husband's financial condition, and, as discussed above, many of those findings are unsupported by the evidence and testimony presented at trial.

The former husband suggests in his appellate brief that the trial court could have determined that the former wife was underemployed, but he made no express argument in that regard at trial. Because the former wife did not seek an increase in the former husband's periodic-alimony obligation, it would not appear, under the facts of this case, that her being underemployed as compared to her previous employment would support the former husband's argument. <u>See</u> <u>Tiongson v. Tiongson</u>, 765 So. 2d 643, 645 (Ala. Civ. App. 1999). The former husband merely elicited testimony indicating that the former wife had changed

23

jobs; even assuming her previous employment had provided her with significantly more income than her employment at the time of trial, the record does not reflect that the former wife no longer required $2,440 per month as periodic alimony. To support a termination of the former husband's periodic-alimony obligation based on the former wife's financial condition, the former husband would have been required to either prove that the former wife's income had or should have increased after the entry of the November 2018 judgment or that her living expenses had decreased since the entry of that judgment. The former husband presented no evidence or testimony in either regard, and the trial court made no reference to any consideration of the former wife's financial condition in the final judgment. Instead, it discussed only the former husband's financial condition as supporting its decision.

Based on the foregoing, we hold that there was insufficient evidence to support the trial court's decision to grant the former husband's request to terminate his periodic-alimony obligation to the former wife. The former husband did not present evidence establishing that a material change in his circumstances had occurred since the entry of the November 2018 judgment, other than a small decrease in his income from

24

$39,000 to $38,400 ($2,400 x 12 + $800 x 12 = $38,400). See Ex parte Ederer, 900 So. 2d at 426; Newsome, 984 So. 2d at 465-66. The final judgment reflects that the basic facts that the trial court utilized to terminate the former husband's periodic-alimony obligation were the same facts upon which it had relied in reducing the former husband's periodic-alimony obligation in the November 2018 judgment. Those facts, having existed in 2018, could not have effected a material change in the former husband's circumstances after the entry of the November 2018 judgment. Accordingly, we reverse that portion of the final judgment terminating the former husband's periodic-alimony obligation.

The former wife next argues that the trial court erred by not finding the former husband in contempt and by not awarding her attorney fees for the present case. She correctly points out that the trial court made findings upon which it could have based a contempt finding -- specifically that the former husband had admittedly not paid the November 2018 attorney-fee award and that he had admittedly failed to pay his entire monthly periodic-alimony obligation for several months. See Kreitzberg v. Kreitzberg, 131 So. 3d 612, 627 (Ala. Civ. App. 2013); Varner v. Varner, 662 So. 2d 273, 277 (Ala. Civ. App. 1994). The former husband argues in

favor of affirming the denial of the former wife's contempt claim, pointing out that, because the trial court determined that he had established a material change in circumstances, the trial court could also have determined that the former husband's financial condition was such that he could not pay those obligations at the time he had failed to do so.

However, in light of our determination that the former husband did not present sufficient evidence of a material change in circumstances, we cannot affirm the trial court's judgment denying the former wife's contempt claim. Because the evidence at the trial did not establish that the former husband had suffered a significant loss of income since the entry of the November 2018 judgment, the trial court must reconsider whether, based on the testimony contained in the transcript of the December 2021 trial and the documentary evidence admitted at that trial, the former husband's failure to pay to the former wife the November 2018 attorney-fee award and the full amount of the alimony to which she was entitled was contemptuous. If the trial court concludes that the former husband is in contempt, it may also consider an award of an attorney fee to the former wife. See Ala. Code 1975, § 30-2-54; see also Crenshaw v. Crenshaw, 386 So. 3d 42, 52 (Ala. Civ. App. 2023); Seibert

26

v. Fields, 290 So. 3d 420, 425 (Ala. Civ. App. 2019); and Kalupa v. Kalupa, 527 So. 2d 1313, 1317 (Ala. Civ. App. 1988).

Based on the foregoing, the final judgment is reversed insofar as it terminates the former husband's periodic-alimony obligation and declines to hold the former husband in contempt, and the case is remanded to the trial court for the entry of a judgment consistent with this opinion.

REVERSED AND REMANDED WITH INSTRUCTIONS.

All the judges concur.